STATE, EX REL. BOARD OF COMMISSIONERS OF THE COUNTY OF HENDRICKS *v.* BOARD OF COMMISSIONERS OF THE COUNTY OF MARION.

[No. 20,918. Filed June 24, 1908.]

1. PLEADING.—*Complaint.—Plaintiff's Representative Capacity.— Boards of Commissioners.—Mandamus.*—A complaint by the "State, on the relation of" the individual members of the board of commissioners "constituting the Board of Commissioners of the County of Hendricks," sufficiently shows that such board is the relator. p. 599.

2. STATUTES.—*Construction.—Conflict.*—All parts of a statute must be harmonized, if possible, but if there is an irreconcilable conflict therein, the later provisions in position prevail. p. 601.

3. SAME.—*Construction.—References to Prior Statutes.—Gravel Roads.*—The gravel road act of 1905 (Acts 1905, p. 493, §§6816-6822 Burns 1905) which refers to section seven of the gravel road act of 1901 (Acts 1901, p. 449, §6905 Burns 1901), must be considered not only with such section but with all of such act of 1901. p. 601.

4. SAME.—*Construction.—Gravel Roads.—Bonds.—Expenses Covered by.*—The act of 1905 (Acts 1905, p. 493, §§6816-6822 Burns 1905), providing for the construction of gravel roads and for the issuance of bonds therefor, contemplates that such bonds shall cover not only the cost up to the time of the letting of the contract for construction, but also for the estimated total cost of such roads. p. 601.

5. MUNICIPAL CORPORATIONS.—*Dual Character.—Local Self Government.*—Cities and towns have a dual character—the one public

so far as they are agencies of the State, and the other private, so far as they provide for purely local affairs. p. 603.

6. COUNTIES.—*Nature of.*—*Liabilities.*—Counties are involuntary subdivisions of the State, created for governmental purposes, and are not liable for the acts of their officers when acting in relation to such governmental duties. p. 608.

7. SAME.—*Power of Legislature Over.*—In the absence of constitutional restrictions, the legislature has plenary control over the governmental powers and duties of counties. p. 608.

8. HIGHWAYS.—*Control Over.*—*Legislature.*—*Counties.*—In the absence of constitutional restrictions, the legislature has complete control of the highways within the State, and may impose upon local subdivisions the duty of supervising such highways, or may exercise direct control over same. p. 608.

9. CONSTITUTIONAL LAW.—*Highways.*—*Construction of.*—*Taxation.* —*Eminent Domain.*—In providing for taxing districts for the construction of public highways, the legislature is exercising its power of taxation and not that of eminent domain. p. 609.

10. TAXATION.—*Powers of Legislature.*—The legislature's power of taxation is unlimited, except as restricted by the Constitution. p. 610.

11. HIGHWAYS.—*Kinds.*—*Construction of.*—*Maintenance.*—Gravel, macadamized, and other kinds of highways may be maintained by the State, or by subdivisions thereof, or by taxing districts created therefor. p. 610.

12. SAME.—*Construction.*—*Taxation.*—Payment for the construction of highways may be made by a tax on all of the property in the taxing district, or by local assessments against the real estate benefited. p. 610.

13. SAME.—*Taxation for Construction of.*—Taxation for the construction and maintenance of public highways is for a state purpose; and the remedy for injustice therein is solely with the legislature. p. 611.

14. SAME.—*Construction.*—*Taxing Districts.*—The legislature in creating taxing districts for the construction and maintenance of highways may disregard the boundaries of counties, townships or municipalities. p. 611.

15. CONSTITUTIONAL LAW.—*Highways.*—*On Boundary Lines.*—*Jurisdiction.*—The act of 1905 (Acts 1905, p. 493, §§6816-6822 Burns 1905), giving to the board of commissioners of the county before which the petition is filed, jurisdiction to establish and construct a public highway upon the boundary line of two or more counties, is constitutional. pp. 612, 618.

16. HIGHWAYS.—*On County Lines.*—*Construction.*—*Bonds.*—Where a highway on a county line is ordered to be constructed by the board of commissioners of one county, it is the duty of the board

of commissioners of the other county to issue bonds against its townships and to levy and collect the tax to pay same.  p. 614.

17.  TAXATION.—_Power of.—Delegation of.—Agencies._—The legislature cannot delegate its powers of taxation, but may establish the governing rules, and then appoint agencies for the assessment and collection of taxes.  p. 614.

18.  HIGHWAYS.—_On County Lines.—Establishment.—Discretion of Board._—Under §6818 Burns 1905, Acts 1905, p. 493, §3, providing that the board before which the petition is filed to establish a highway upon the county boundary line "shall have discretionary power to order or refuse to order said proposed improvement," and that if the board finds the petition sufficient it "shall establish said improvement," the board is required to establish such highway where the petition is sufficient.  p. 616.

19.  CONSTITUTIONAL LAW.—_Judicial Powers.—Boards of Commissioners._—The act of 1905 (Acts 1905, p. 493, §§6816-6822 Burns 1905), providing that a certain number of petitioners may file in either affected county their petition for the establishment of a highway upon the county boundary line, and that the board before which such petition is filed shall have power to establish such highway, is not in violation of §10, Art. 6 of the Constitution providing that the "General Assembly may confer upon boards doing county business  *  *  *  powers of a local administrative character."  p. 618.

20.  STATUTES.—_Adopting by Reference._—A statute may adopt a part or all of another statute by reference, and the effect is the same as if the statute or part adopted had been written into the adopting statute;  and only such portion of the adopted statute is in force as is appropriate to the adopting statute.  p. 619.

21.  CONSTITUTIONAL LAW.—_Statutes.—Title.—Adopted Statutes._— The act of 1905 (Acts 1905, p. 493, §§6816-6822 Burns 1905), providing for the establishment and construction of highways upon county lines, and adopting certain other highway statutes by reference thereto, does not violate §19, Art. 4, of the Constitution, providing that the title of an act "shall embrace but one subject and matters properly connected therewith."  p. 619.

22.  STATUTES.—_Adopting Other Statutes.—Validity._—The highway act of 1905 (Acts 1905, p. 493, §§6816-6822 Burns 1905), providing that the status of a highway to be established thereunder should be, at a named time, the same as a proposed highway, at a certain time, under the act of 1893 (Acts 1893, p. 196), or the act of 1901 (Acts 1901, p. 449), is valid even though the act of 1893 had been repealed, since the status could still be determined under the act of 1901.  p. 620.

23.  SAME.—_Passed at Same Session.—Conflict.—Approval.—Effect._ —Where two conflicting statutes relating to the same subject-

matter are passed on different days at the same session, and take effect on the same day, the one approved last will prevail. p. 621.

24.   STATUTES.—*In Pari Materia.*—*Highways.*—The act of 1905 (Acts 1905, p. 493, §§6816-6822 Burns 1905), providing for the establishment and construction of county-line highways, not to exceed three miles in length, and providing that all the property within the taxing district shall be assessed therefor, does not conflict with the act of 1905 (Acts 1905, p. 521, §60, §7709 Burns 1908), providing generally for establishing and constructing county-line highways and taxing therefor the lands benefited within two miles of the highway.   p. 622.

25.   HIGHWAYS.—*County-Line.*—*Orders for Constructing Road.*—*Vacation of.*—Where the board of commissioners before which a county-line highway petition was pending met with the board of the adjoining county and they apportioned the cost of the road, both boards making the necessary orders for the payment of such construction, such adjoining county's vacation of its orders therefor, is void.   p. 623.

From Superior Court of Marion county (70,567); *Vinson Carter,* Judge.

Action by the State of Indiana, on relation of the Board of Commissioners of the County of Hendricks, against the Board of Commissioners of the County of Marion. From a judgment for defendant, plaintiff appeals. *Reversed.*

*Brill & Harvey, Harding & Hovey* and *Myers & Yarlott,* for appellant.

*Caleb S. Denny, George L. Denny* and *Horace L. Gould,* for appellee.

MONKS, J.—This action was brought to compel appellee, by the writ of mandamus, to perform certain alleged duties, under the act approved March 7, 1905 (Acts 1905, p. 493, §§6816-6822 Burns 1905), for the construction of free gravel, stone or other macadamized roads on county lines.

Appellee's demurrer was sustained to the petition and alternative writ, and, appellant refusing to plead further, judgment was rendered for appellee.

The only errors assigned call in question the action of the court in sustaining said demurrer.

It appears from the petition and alternative writ that a petition was filed with the Board of Commissioners of the County of Hendricks for the improvement of a highway on the boundary line between the counties of Hendricks and Marion, under §§6816-6822, *supra*. Such steps were taken that said board ordered that said highway be improved, the contract for said improvement was let, and the boards of commissioners of said counties met in joint session and apportioned the cost of said improvement among the townships abutting said road, as required by said act. Afterwards the Board of Commissioners of the County of Marion entered an order that "all of its proceedings and orders made in said proceedings be vacated and annulled, and that the action taken by said board of commissioners and the Board of Commissioners of the County of Hendricks, fixing the amount to be paid by townships abutting on said road, and the advertisement for the sale of bonds, as well as the contracts entered into by the Board of Commissioners of the County of Hendricks, be and the same are not concurred in by this board, and that no further proceedings be had under this petition, and that the same are now dismissed by this board at the cost of the petitioners."

It is not claimed by appellee that there was any failure to comply with the requirements of said act, but the ruling of the court in sustaining the demurrer to the alternative writ is defended on the ground: "(1) That the members of the board of commissioners were not proper relators; (2) that the proposed bond issue will be unlawful, being based on the estimated cost instead of actual expenses; (3) that said act is unconstitutional."

This proceeding was brought by the "State, on the relation of," setting out the names of the individual members of the board, "constituting the Board of Commissioners of the County of Hendricks, against the Board of Commissioners of the County of Marion." We

think the language used made the Board of Commissioners of the County of Hendricks the relator. And as no question is made as to. said board's being a proper relator, we pass to the second objection urged by appellee.

Section four of said act (§6819, *supra*) requires the abutting townships to pay the expense of the improvement, "including the cost of the survey, printing, bonds, publications and the expense of county auditor and members of the board of commissioners attending any meeting or meetings out of their own county, in the same manner, extent and portions, and under the same rule as now provided by law in section seven of" the act of 1901 (Acts 1901, p. 449, §6905 Burns 1901).

Appellee contends that, as section six of said act of 1901 (§6904 Burns 1901) provides that "for the purpose of raising money to pay for such construction the board of commissioners shall issue the bonds of the. county, not to exceed in amount the contract price and all expenses incurred prior to the letting of the contract," the attempted bond issue is unlawful, because the amount thereof is in excess of the amount of the contract price and all the expenses incurred prior to the letting of the contract.

Section ten of said act of 1901 (§6908 Burns 1901) provides for the appointment of a superintendent to supervise the construction of such roads, and that his compensation shall not exceed $2 per day, "to be paid out of the construction fund of said road or roads." Such superintendent renders all of his services under said act after the contract is let, and, according to appellee's contention, the amount thereof could not be included in the bonds issued for that reason. If said act of 1901 is so construed, there would be no funds for the construction of said road or roads out of which said superintendent could be paid for his services.

It is said in 1 Lewis's Sutherland, Stat. Constr. (2d ed.), p. 514: "The different sections or provisions of the same stat-

ute or code should be so construed as to harmonize and
2. give effect to each, but, if there is an irreconcilable
conflict, the later in position prevails.'' See, also, 2
Lewis's Sutherland, Stat. Constr. (2d ed.), §§349, 350;
Black, Interp. of Laws, p. 168; 26 Am. and Eng. Ency.
Law (2d ed.), 734, 735.

In determining the question presented by appellee, not
only the sections of the act of 1901 referred to but
3. all of said act and the act of 1905 must be considered.

Section four of said act of 1905 (§6819, *supra*), provides
for joint meetings of the board of commissioners after the
contract is let and after the bonds are issued and
4. sold, and for the payment of the expenses of the
county auditor and the members of the board of commissioners in attending any meeting outside their own county. These expenses and the expense of printing the bonds,
like the expense for the compensation of the superintendent
under the law of 1901, are incurred after the contract is let,
and a part of the expense of the auditor and members of
the board of commissioners may be incurred after the bonds
are sold. §§6819, 6821, 6822, *supra*.

It is clear, therefore, that the amount of the bonds is not
limited to the contract price and expenses incurred before
the contract is let, as claimed by appellee, and that the expenses to be incurred after the apportionment of the ''total
cost'' of the improvement provided for in §6819, *supra,* must
necessarily be estimated.

The grounds upon which appellee insists that the act of
1905 (§§6816-6822, *supra*) is unconstitutional are as follows: ''(1) It is a deprivation of the right to local self-government. (2) It delegates to the board of commissioners of one county the power at its absolute discretion and
pleasure to levy a tax against another political subdivision
of the State, when such subdivision has no voice in choosing

said board, which is taxation without representation. (3) It is a violation of §10, article 6, of the state Constitution, which provides: 'The General Assembly may confer upon the boards doing county business in the several counties, powers of a local, administrative character.' (4) That said act is unconstitutional because the title does not fill the requirements of §19, article 4, of the state Constitution. (5) It is a taking of property without due process of law in violation of the 14th amendment to the Constitution of the United States.''

The act of 1905, *supra,* provides for the improvement of unimproved highways not exceeding three miles in length on the boundary line between two counties upon the petition of fifty freeholders, voters of any township or townships abutting such unimproved highway, the same to be considered and determined after giving notice by the board of commissioners of either county adjoining such unimproved highway. Complete jurisdiction is given to the board of commissioners of the county before which the proceedings are commenced to order the road constructed, let the contract, etc., and the other county is required to issue its bonds for the amount apportioned to the abutting townships in said county, levy the amount of said bonds and the interest thereon on the taxable property in said abutting townships, and collect and apply the same in payment of said bonds and interest.

In this case the petition was filed before the commissioners of Hendricks county, and that board ordered the road built, and let the contract therefor. Appellee insists that counties, like cities, ''have the constitutional right of local self-government, which can not be destroyed by the legislature, and that said act violates this right, because the Board of Commissioners of the County of Marion had absolutely no voice in determining whether said road should be constructed,'' and, further, ''that it gave the Board of Commissioners of the County of Hendricks absolute discretion to levy a tax

against the abutting townships in Marion county, which was taxation without representation.'' Citing *State, ex rel.,* v. *Denny* (1889), 118 Ind. 382, 4 L. R. A. 79; *City of Evansville* v. *State, ex rel.* (1889), 118 Ind. 426, 4 L. R. A. 93; *State, ex rel.,* v. *Denny* (1889), 118 Ind. 449, 4 L. R. A. 65; *State, ex rel.,* v. *Fox* (1902), 158 Ind. 126, 56 L. R. A. 893.

The cases cited by appellee to sustain its contention as to the right of local self-government involve that right only as applied to the incorporated cities and towns of the State. Those cases recognize the twofold character of such corporations, the one public so far as they are agencies of the state government, and the other private so far as they are to provide for matters of purely local concern. See, also, 1 Abbott, Mun. Corp., §§7, 20; Cooley, Const. Lim. (7th ed.), 333-340, and note; 20 Am. and Eng. Ency. Law (2d ed.), 1131, and cases cited; note to *State, ex rel.,* v. *Williams* (1896), 48 L. R. A. 465-493; *State, ex rel.,* v. *Barker* (1902), 116 Iowa 96, 102-105, 89 N. W. 204, 57 L. R. A. 244, 93 Am. St. 222, 226-228, and cases cited; *Arnett* v. *State, ex rel.,* (1907), 168 Ind. 180, 8 L. R. A. (N. S.) 1192; *State, ex rel.,* v. *Kolsem* (1892), 130 Ind. 434, 14 L. R. A. 566; *Horton* v. *City Council, etc.* (1905), 27 R. I. 283, 61 Atl. 759, 1 L. R. A. (N. S.) 512; *Ex parte Lewis* (1903), 45 Tex. Crim. 1, 73 S. W. 811, 108 Am. St. 929, and cases cited.

*Arnett* v. *State, ex rel., supra,* and *State, ex rel.,* v. *Kolsem, supra,* sustain the right of the State to control the local police of a municipality on the ground that the police is a matter of state concern as distinguished from the purely local functions of the municipality.

It was held in *State, ex rel.,* v. *Fox, supra,* that the legislature had no authority to place the management of the fire department of a municipal corporation under the control of officers appointed by the State, on the ground that the same was a matter of purely local concern. The court said, on page 130: ''It is well to note at the beginning that this question does not challenge the right of the State to super-

vise the power of municipal bodies so far as it relates to subjects of public concern, such as the preservation of the peace, the construction and care of public streets, sewers, and the like, but the inquiry here is restricted to the power of the legislature to strip a town or city organization of all right to manage in its own way the exclusively private property it is authorized to acquire.'' Again, in the same case, on page 135, the court said: ''It should be remembered that municipal corporations are instituted by legislative authority for a twofold purpose: (1) As state governmental agencies, to·assist the State in their localities in the administration and execution of such laws as pertain to the people of the State at large; ·(2) for the promotion of certain exclusively local interests which are peculiar to concentrated population, and in which the State, except in conferring the power and regulating its exercise, has no more right of interference than it has with the private affairs of its several inhabitants. With respect to the first, there are important powers ·delegated to municipalities which concern every citizen of the State, and for the proper exercise of which the State cannot abdicate responsibility by committing them to local officers. It is very clear, from the tenor of the whole instrument, that the Constitution makers never intended that the territorial divisions recognized—that is, counties, townships, and towns—should govern themselves independently of state supervision or of state supremacy, but in every matter which affects the safety, morals, health, or general welfare of the people at large, or of a considerable number of them, there is undoubtedly reserved in the State the power to supervise, control, and even coerce, local officers in the discharge of public duties, and even to send its own agents into any organized district, if necessary to enforce a public right, or accomplish a public benefit. For instance, every citizen has the right to travel the public highways—those in the cities and towns, where, according to common usage, they are made, dug up, and improved by local action,

as well as those in rural districts. In every part of these highways the traveler is entitled to the State's protection from violence and from dangerous situations. For the preservation of the public health, for the prevention of disease and epidemics, each inhabitant has an interest in the proper drainage of lands, and in the suppression of all unsanitary conditions, whether rural or urban, and without regard for territorial boundaries, and the right to look to the State for protection against these evils so far as the same may be legally afforded. Likewise the enforcement of the State's criminal and revenue laws are of equal importance to all. In all these, and kindred things, the setting up of corporation lines forms no barrier to the strong arm of the State in safeguarding every public interest.''

In *People, ex rel., v. Common Council, etc.* (1873), 28 Mich. 228, 15 Am. Rep. 202, the court said in regard to the dual character of municipal corporations: ''In *People, ex rel., v. Hurlbut* [1871], 24 Mich. 44, 9 Am. Rep. 103, we considered at some length the proposition which asserts the amplitude of legislative control over municipal corporations, and we there conceded that when confined, as it should be, to such corporations as agencies of the state in its government, the proposition is entirely sound. In all matters of general concern there is no local right to act independently of the state; and the local authorities cannot be permitted to determine for themselves whether they will contribute through taxation to the support of the state government, or assist when called upon to suppress insurrections, or aid in the enforcement of the police laws. Upon all such subjects the state may exercise compulsory authority, and may enforce the performance of local duties, either by employing local officers for the purpose, or through agents or officers of its own appointment. The same doctrine was declared in *People* v. *Mahaney* [1865], 13 Mich. 481, and in *Bay City* v. *State Treasurer* [1871], 23 Mich. 499. It was also recognized in the statement that in the levy of taxes for purposes

of general concern the municipal bodies cannot demand a right to be consulted, and their consent is immaterial. And we concur fully in the views which have been expressed by other courts in the cases to which our attention was called on the argument, that as regards duties which the people in the several localities owe to the commonwealth at large, they cannot be allowed a discretionary authority to perform them or not as they may choose. Such an authority would be wholly inconsistent with any thing like regular or uniform government in the state. But we also endeavored to show in *People, ex rel.,* v. *Hurlbut, supra,* that though municipal authorities are made use of in state government, and as such are under complete state control, they are not created exclusively for that purpose, but have other objects and purposes peculiarly local, and in which the state at large, except in conferring the power and regulating its exercise, is legally no more concerned than it is in the individual and private concerns of its several citizens. Indeed, it would be easy to show that it is not from the standpoint of state interest, but from that of local interest, that the necessity of incorporating cities and villages most distinctly appears. State duties of a local nature can for the most part be very well performed through the employment of the usual township and county organizations, so that if the state alone, in its corporate capacity, were to be regarded, the conferring of special corporate powers on cities and villages might very well be dispensed with. It is because where an urban population is collected many things are necessary for their comfort and protection which are not needed in the country, and which the county and township organizations, with their imperfect powers and machinery, cannot well supply, that the state is then called upon to confer larger powers, and to make of the locality a subordinate commonwealth, which, while it shall perform for the state wholly or in part what the county and township officers performed before, shall

also be endowed with capacities to provide for its citizens such matters of necessity or convenience as their health, protection, comfort or enjoyment as a political community may demand. Indeed, it is a matter of general observation that the state does not force upon the local community these larger powers, but waits to be solicited to confer them when the people interested shall deem them for their advantage. \* \* \* We also referred in *People, ex rel.,* v. *Hurlbut, supra,* to several decisions in the Federal Supreme Court, and elsewhere, to show that municipal corporations, considered as communities endowed with peculiar functions for the benefit of their own citizens, have always been recognized as possessing powers and capacities, and as being entitled to exemptions, distinct from those which they possess or can claim as conveniences in state government. If the authorities are examined it will be found that these powers and capacities, and the interests which are acquired under them, are usually spoken of as private, in contradistinction to those in which the state is concerned, and which are called public; thus putting these corporations, as regards all such powers, capacities and interests, substantially on the footing of private corporations. This distinction is very carefully drawn in *Bailey* v. *Mayor, etc.* [1842], 3 Hill 531, 38 Am. Dec. 669, which concerned the New York water-works, and also in *Small* v. *Inhabitants of Danville* [1864], 51 Me. 359; *Philadelphia* v. *Fox* [1870], 64 Pa. St. 169, and *Western College, etc.,* v. *City of Cleveland* [1861], 12 Ohio St. 375."

It will be observed that in *People, ex rel.,* v. *Common Council, etc., supra,* it is held that state duties of a local nature are imposed upon townships and counties, and that cities and villages are given larger powers than townships and counties, that they may provide for their citizens such matters of local concern as they may need.

It is not necessary for us to determine what power, if any, the State may exercise over the streets and alleys of a city,

but only what power the State may exercise over the improvement of highways located on the boundary line between two counties.

A county is an involuntary corporation organized as a political subdivision of the State by the legislature, the sovereign power, solely for governmental purposes.

6. Such subdivisions are instrumentalities of government, exercising the powers delegated by the State and acting for the State. As the State is not liable for the acts or omissions of its officers, a county is not liable for the acts or omissions of its officers in relation to such functions, because they belong to the State. *Board, etc., v. Mowbray* (1903), 160 Ind. 10, 12, and authorities cited; *Board, etc., v. Allman* (1895), 142 Ind. 573, 39 L. R. A. 58, and cases cited; *Cones v. Board, etc.* (1894), 137 Ind. 404, and cases cited; *Board, etc., v. Daily* (1892), 132 Ind. 73; *Smith v. Board, etc.* (1892), 131 Ind. 116; *Morris v. Board, etc.* (1892), 131 Ind. 285; *White v. Board, etc.* (1891), 129 Ind. 396; *Summers v. Board, etc.* (1885), 103 Ind. 262, 53 Am. Rep. 512.

If such powers are delegated by the legislature, and not by the Constitution, the legislature may enlarge, dimin-

7. ish or withdraw the same in the absence of a constitutional restriction. *Board, etc., v. Mowbray, supra.*

All roads laid out under legislative enactment are public highways belonging to the State, under full control of the legislature. While this control is, as a general rule,

8. exercised through the instrumentality of local governmental subdivisions of the State, the legislature may, in the absence of constitutional limitations, directly exercise control of public highways. Elliott, Roads and Sts. (2d ed.), §§9, 421, 423-426; *Garvin v. Daussman* (1888), 114 Ind. 429, 435, 5 Am. St. 637; *Cones v. Board, etc., supra; Board, etc., v. Allman, supra,* and cases cited; *City of Indianapolis v. Higgins* (1895), 141 Ind. 1; *Backus v. Fort St. Union Depot Co.* (1898), 169 U. S. 557, 18 Sup. Ct. 445, 42

L. Ed. 853; *Williams* v. *Eggleston* (1898), 170 U. S. 304, 18 Sup. Ct. 617, 42 L. Ed. 1047; *O'Connor* v. *Pittsburgh* (1851), 18 Pa. St. 187; *In re Philadelphia, etc., R. Co.* (1840), 6 Wharton (Pa.) 25, 36 Am. Dec. 202.

It was said by this court in *Cones* v. *Board, etc., supra,* at p. 408: "Highways are the arteries of the State, and the State has never surrendered her right to direct, by legislation, the manner and agencies through which they are created, maintained, and vacated. Even as to free gravel roads, the only power to create them and maintain them is by special and direct authority from the State, even to the detail of naming the officer, and prescribing his duties, who shall perform the various elements of that authority. The State has retained the power to punish not only for the neglect of official duty with relation to highways, but for the obstruction of, and interference with, public travel upon them."

In this State the legislature, in enacting laws like the one in controversy for the improvement of public highways of the State, exercises not the power of eminent domain, 9. but the sovereign power of taxation, and such laws are not in conflict with the 14th amendment to the Constitution of the United States. 2 Cooley, Taxation (3d ed.), 1181-1183; *Board, etc.,* v. *Harrell* (1897), 147 Ind. 500, 504-509; *Lowe* v. *Board, etc.* (1901), 156 Ind. 163, and authorities cited; *Voris* v. *Pittsburg Plate Glass Co.* (1904), 163 Ind. 599, 607, and cases cited on pages 606-608; *Goodrich* v. *Winchester, etc., Turnpike Co.* (1866), 26 Ind. 119; *Spencer* v. *Merchant* (1888), 125 U. S. 345, 8 Sup. Ct. 921, 31 L. Ed. 763, and cases cited; *Barber Asphalt Pav. Co.* v. *French* (1900), 158 Mo. 534, 58 S. W. 934, 54 L. R. A. 492, and cases cited; *Webster* v. *City of Fargo* (1900), 9 N. Dak. 208, 82 N. W. 732, 56 L. R. A. 156, and authorities cited; *Parsons* v. *District of Columbia* (1898), 170 U. S. 45, 52-56, 18 Sup. Ct. 521, 42 L. Ed. 943; *Williams* v. *Eggleston, supra.*

It is well settled that the power of the legislature in matters of taxation for public purposes is unlimited, except as restricted by the state or federal Constitution. *Lowe v. Board, etc., supra,* and authorities cited; *Spencer v. Merchant, supra,* and cases cited.

Gravel and macadamized roads and roads built of other material may be constructed and kept in repair by the State, or under state authority by municipal subdivisions of the State, or taxing districts created by the legislature for that purpose. Cooley, Taxation (2d ed.), 130-133; 1 Cooley, Taxation (3d ed.), 212-216, 232-238; *Spencer v. Merchant, supra; Parsons v. District of Columbia, supra; Williams v. Eggleston, supra; Lowe v. Board, etc., supra,* and authorities cited; *Gilson v. Board, etc.* (1891), 128 Ind. 65, 69-72, 11 L. R. A. 835.

This court in *Lowe v. Board, etc., supra,* on page 165, approved the statement in 1 Cooley, Taxation, 94—(2d ed.), 130 —(3d ed.), 212: " 'One of the most important functions of government is making provision for public roads for the use of the people. * * * No question is made of the competency of the legislature to levy taxes for the common highway, the improved turnpike and macadamized road, the planked or paved street, the canal, the tramway or the railway. Any or all of them may be constructed by the state, or, under state authority, by the municipal subdivisions of the state within whose limits they may be needed. They may be supported and kept in repair by taxation of the state or of proper districts, or private corporations may be invested with the franchise of constructing them and taking tolls for their use.' "

Such improvements may be made by a tax on all the property, real and personal, in the taxing district, as under the law in question here, or by local assessments against the real estate specially benefited. *Lowe v. Board, etc., supra; Board, etc., v. Harrell, supra; Gilson v. Board, etc., supra; Voris v. Pittsburg Plate Glass Co., supra,*

and authorities cited; *Bowles* v. *State* (1881), 37 Ohio St. 35; *Cass Farm Co.* v. *City of Detroit* (1900), 124 Mich. 433, 83 N. W. 108, affirmed in *Cass Farm Co.* v. *City of Detroit* (1901), 181 U. S. 396, 21 Sup. Ct. 644, 45 L. Ed. 914; *Barber Asphalt Pav. Co.* v. *French, supra,* affirmed in *French* v. *Barber Asphalt Pav. Co.* (1901), 181 U. S. 324, 21 Sup. Ct. 625, 45 L. Ed. 879; 2 Cooley, Taxation (3d ed.), 1180, 1205-1210.

The construction or repair of public highways by the State under any system it may adopt, is the exercise of a state function, and is, as was said by Judge Cooley, 13. the exercise of one of the most important functions of government. 1 Cooley, Taxation (3d ed.), 212.

A uniform tax upon all the property, real and personal, in a taxing district, according to its appraised value for taxation, for the construction and repair of public highways, as in the law in controversy here, is for a governmental purpose the same as a tax to support the public schools of the State, the police power of the State, or to maintain the different departments of the state government. The remedy for such taxation, if unwise, unjust or oppressive, must be sought from the legislative, and not the judicial, department of the State. *Lowe* v. *Board, etc., supra,* pages 165, 166, and authorities cited.

The legislature, in the exercise of the power of making such improvements, may, by a general law, provide for taxing districts without regard to the boundaries of coun- 14. ties, townships or municipalities. *Gilson* v. *Board, supra,* pages 70, 71, and cases cited; *Board, etc.,* v. *Harrell, supra; Lowe* v. *Board, etc., supra; Williams* v. *Eggleston, supra; Barber Asphalt Pav. Co.* v. *French,. supra,* and cases cited; *French* v. *Barber Asphalt Pav. Co., supra;* Elliott, Roads and Sts. (2d ed.), §83; 2 Cooley, Taxation (3d ed.), 1205-1210.

Judge Cooley says: "Taxing districts may be as numerous as the purposes for which taxes are levied. * * * It

is not essential that the political divisions of the state. shall be the same as the taxing districts, but special districts may be established for special purposes, wholly ignoring the political divisions. A school district may be created of territory taken from two or more townships or counties, and the benefits of a highway, a levee, or a drain may be so peculiar that justice would require the cost to be levied either upon part of a township or county, or upon parts of several such subdivisions of the state. * * * It is compulsory that the political divisions of the state shall be regarded in taxation only where the tax itself is for a purpose specially pertaining to one of them in its political capacity, so that, as already stated, the nature of the tax will determine the district." 1 Cooley, Taxation, 113, 114—(2d ed.), 151, 152—(3d ed.), 238-240. In 1 Cooley, Taxation (3d ed.), 234, it is said: "When the nature of the case does not conclusively fix it, the power to determine what shall be the taxing district for any particular burden is purely a legislative power, and not to be interfered with or controlled, except as it may be limited or restrained by constitutional provisions."

This court in *Board, etc.,* v. *Harrell, supra,* quoting from Elliott, Roads and Sts., 393, said: "The weight of authority * * * is overwhelmingly in favor of the right of the legislature to determine what property shall be assessed and how the apportionment shall be made."

The validity of §§6726-6741 Burns 1901, Acts 1899, p. 81, §§5002-5014 R. S. 1881, and Acts 1889, p. 296, §§1, 2, giving the circuit and superior courts of the county in which the petitioners resided jurisdiction to establish and construct a highway extending into another county has been sustained by this court. *Hudson* v. *Bunch* (1888), 116 Ind. 63, 65, and cases cited.

Sections 5655-5680 Burns 1901, provide for the construction of drains extending into two or more counties, and require (§§5677, 5678, 5678a, *supra*) that the proceeding shall be commenced in the county containing the head or source

of the ditch. This court has held under said law that the whole jurisdiction or power in such a proceeding is in the board of commissioners where the proceeding is commenced, and that the boards of commissioners in the other counties into which the ditch extends only act in an administrative capacity, and may be compelled by mandamus to perform such duties. *Strayer* v. *Taylor* (1904), 163 Ind. 230, 233, 234, and cases cited; *Whirledge* v. *Shoup* (1905), 165 Ind. 486, 488, and cases cited; *State, ex rel.,* v. *Popejoy* (1905), 165 Ind. 177, 179, and cases cited; *Denton* v. *Thompson* (1894), 136 Ind. 446, 452, 453.

As was said in *State, ex rel.,* v. *Popejoy, supra,* at page 179: ''The board of commissioners of the county in which the ditch proceeding originates is given general jurisdiction over the work, and its orders and judgments are certified to the boards of other counties concerned, to be spread of record, and carried out by them in an administrative capacity. This provision was necessary to preserve the unity of the proposed work and harmony in the proceedings.''

In *Denton* v. *Thompson, supra,* at page 452, this court said: ''It has been frequently held by this court, that under the act of 1881, for the construction of public drains under authority of the circuit court, the drain is a unit throughout all the counties into which it may extend, and is under the jurisdiction of the court where the proceedings were first instituted. *Fleenor* v. *Driskill* [1884], 97 Ind. 27; *Crist* v. *State, ex rel.* [1884], 97 Ind. 389; *State, ex rel.,* v. *Turvey* [1885], 99 Ind. 599; *Meranda* v. *Spurlin* [1885], 100 Ind. 380; *Updegraff* v. *Palmer* [1886], 107 Ind. 181; *Hudson* v. *Bunch* [1888], 116 Ind. 63; *Crooks* v. *State ex rel.* [1891], 126 Ind. 572. We think that a like rule must obtain where drains are constructed under authority of boards of commissioners, and where the drain extends into two or more counties. A public drain is, from its very nature, an entirety; and though it may extend into two or more counties, yet the proceedings must be under one author-

ity. Otherwise, a board of commissioners or circuit court, having jurisdiction at the source of the drain, might order its construction, while the board or court having jurisdiction at the outlet, or at some intermediate point, might determine that there should be no drain established. The legislature did not contemplate any such absurd result, but, both in the circuit court act and in the act for the construction of drains by the county commissioners, has, as we think, provided for one jurisdiction over the whole work.''

What was held in said drainage cases applies with equal force to the proceeding to improve a highway on the boundary line betwen two counties under the act of 1905 (Acts 1905, p. 493, §§6816-6822 Burns 1905).

Said act did not authorize the Board of Commissioners of the County of Hendricks to levy any tax against the property of the abutting townships in Marion county, as claimed by appellee, but it required that the bonds for said townships in Marion county be issued by the Board of Commissioners of the County of Marion, and that said board levy and collect the tax on the real and personal property in said townships to pay the same. §§6817-6820, supra.

It is true, as we have already shown, that the power of taxation is a legislative function, and cannot be delegated by that department of the state government to any other (Const., article 3, §1), nor, in the main, can there be any delegation of that authority, except to the extent that our form of government makes it necessary that taxes should be levied by the various local bodies under legislative authority for local purposes. School City of Marion v. Forrest (1907), 168 Ind. 94.

In 1 Cooley, Taxation (3d ed.), 100, it is said: ''The people have not authorized this department [the legislative] to relieve itself of the responsibility by a substitution of other agencies. But it is never assumed by the people that the legislature can take such supervision of all the in-

finite variety of interests in the state, and of all local as well as general affairs, as to be able to determine in every instance precisely what is needed in matters of taxation, and precisely what purposes shall at any time, under the particular circumstances, be provided for. There is a difference between making the law and giving effect to the law; the one is legislation and the other administration. We conceive that the legislature must, in every instance, prescribe the rule under which taxation may be laid; it must originate the authority under which, after due proceedings, the tax gatherer demands the contribution; but it need not prescribe all the details of action, or even fix with precision the sum to be raised or all the particulars of its expenditure. If the rule is prescribed which, in its administration, works out the result, that is sufficient; but to refer the making of the rule to another authority would be in excess of legislative power. An illustration or two may possibly sufficiently explain the principle. The legislature, with the utmost propriety, may provide for a court of claims or a state board of audit, whose adjudications against the state shall be final upon it; and may direct that the amounts awarded shall go into the general levy for the year. Here is a rule to be properly worked out by a proper agency.  *  *  *  But to leave to a court of claims or any state officer or board the power to determine whether a tax should be laid for the current year, or at what rate, or upon what property, or how it should be collected, and whether lands should be sold or forfeited for its satisfaction,—all this prescribes no rule, and originates no authority; it merely attempts to empower some other tribunal to prescribe a rule and set in motion the tax machinery. And this is clearly incompetent. The legislature must make the law, but it may prescribe its own regulations regarding the ministerial agents that are to execute it."

The legislature by the act of 1905, *supra,* and not the boards of commissioners of said counties or either of them,

prescribed the rule under and the property upon which the tax should be levied, and how it should be collected. As well claim, under the illustration given by Judge Cooley, in the quotation just given, that the court of claims or state board of audit, in adjudicating an indebtedness against the State under a law passed by the legislature, that the same "shall be final, and that the amount awarded shall go into the general levy," thereby levies a tax against the State, as to claim that the Board of Commissioners of the County of Hendricks, by ordering the improvement to be constructed and letting the contract therefor under said act of 1905, levied a tax against the abutting townships in Marion county.

Appellee claims that the board of commissioners before which said petition is filed—in this case the Board of Commissioners of the County of Hendricks—has, under 18. section three of said act of 1905 (§6818, *supra*), an absolute discretion to order or refuse to order said improvement, and that this gave the board of commissioners of one county the power, in its discretion, to take charge of the affairs of an administrative character of an adjoining county. True, §6816, *supra*, says that "said board of commissioners shall have discretionary power to order or refuse to order said proposed improvement," but this provision is immediately followed by another, that "if they find it [the petition] to be sufficient and in compliance with the provisions of this act they shall establish said improvement and order the same to be constructed." It is evident that these provisions do not give the board an absolute or arbitrary discretion, but they require that the board shall give effect, not to "the will of the board," but "to the will of the law." Whether said act would be invalid if it vested an absolute or arbitrary discretion in the board, we need not determine.

"The construction of a free turnpike or gravel road is not, in a strict legal sense, a county matter, for the commissioners do not levy assessments by virtue of their position as the of-

ficial representatives of the county, but by virtue of an ex-press statute specially conferring that power upon them. They are not, at least so far as the property owners are concerned, acting as the agents of the county while exercising the powers conferred by the statute, and it is legally impossible to conceive any valid reason why the county should sustain any loss because of their errors, negligence or wrongs.'' *Board, etc.,* v. *Fullen* (1887), 111 Ind. 410, 413.

In *Board, etc.,* v. *Branaman* (1907), 169 Ind. 80, this court said: ''In the enactment of the law in regard to the construction of free gravel roads the legislature has deemed it proper to designate the board of commissioners of the county as the tribunal before which the proceedings to build or construct such highways shall be instituted and carried to a final completion. The commissioners, therefore, merely act as a board for that purpose. The statute does not contemplate that the board shall be the agent of the particular township which constitutes the taxing district. It is merely the designated agency or instrumentality of the law to carry into effect its provisions, and for this purpose it has been invested by the statute with certain limited functions and powers, some of which are in their nature and character administrative, while others may be said to be judicial. In carrying the law into effect the board cannot exceed the powers with which it has been invested.''

It is evident from the cases cited that the Board of Commissioners of the County of Hendricks, in ordering such improvement and letting the contract therefor, under the act of 1905, *supra,* was not acting as the agent of the townships in said taxing district, or of said counties, but merely as the ''agency or instrumentality of the law to carry into effect its provisions,'' and that it did not thereby take charge of the affairs of Marion county. As was held in *Board, etc.,* v. *Fullen, supra,* and *Board, etc.,* v. *Branaman, supra,* the improvement of a highway is not, in a strict legal sense, a county matter or affair.

Under the law in controversy, a part of the highway to be improved must be in the county in which the petition is filed, and, as the proceeding in its nature is an entirety, the legislature, in order to preserve the unity of the proposed work and harmony in the proceedings, has properly given the jurisdiction to order the improvement and make the contract therefor to the board of commissioners before which the petition is first filed. *State, ex rel.*, v. *Popejoy, supra; Denton* v. *Thompson, supra,* and cases cited; *Strayer* v. *Taylor, supra,* and cases cited.

The question whether a law authorizing the board of commissioners of one county to order and contract for the improvement of a highway wholly within another county, and to levy and collect taxes against the property in such other county, and pay for the same, would be valid, is not before us, and is not therefore decided.

We will now consider the objection that said act violates article 6, §10, of the state Constitution. Boards of commissioners, at the time the present Constitution took effect, had judicial powers—the powers of courts. 1 Elliott, Gen. Prac., §197; *State, ex rel.*, v. *Board, etc.* (1885), 101 Ind. 69, 71, 72; *Board, etc.,* v. *Connor* (1900), 155 Ind. 484; *Strayer* v. *Taylor, supra.*

Article 3, §1, of the Constitution provides: "The powers of the government are divided into three separate departments; the legislative, the executive, including the administrative, and the judicial; and no person charged with official duties under one of these departments shall exercise any of the functions of another, except as in this Constitution expressly provided."

Such boards of commissioners, being courts, belonged to the judicial department of the state government, and the Constitution recognized that fact by providing in article 6, §10: "The General Assembly may confer upon the boards doing county business in the several counties, powers of a local, administrative character." No such provision would

have been necessary if boards of commissioners belonged to the "executive, including the administrative," department of the state government.

Article 4, §19, of the Constitution, "the requirements of which appellee claims the title of said act does not fill," provides: "Every act shall embrace but one subject and matters properly connected therewith; which subject shall be expressed in the title. But if any subject shall be embraced in an act which shall not be expressed in the title, such act shall be void only as to so much thereof as shall not be expressed in the title." This objection is based on the fact that other statutes are mentioned in said act, and it is provided that after the improvement is established and ordered constructed further proceedings shall be under the act of March 11, 1901 (Acts 1901, p. 449, §6899 *et seq.* Burns 1901). Said "other statutes" and said act of 1901 are concerning the improvement of public highways by proceedings before boards of county commissioners, including all details thereof.

It is well settled that one statute may adopt a part of or all of another statute by a specific and descriptive reference thereto, and the effect is the same as if the law or statute, or the part thereof adopted, had been written into the adopting statute. 2 Lewis's Sutherland, Stat. Constr. (2d ed.), §§405-407; *State, ex rel.,* v. *Leich* (1906), 166 Ind. 680, 682, and authorities cited. When so adopted only such portion is in force as relates to the particular subject of the adopting act, and is applicable and appropriate thereto. 2 Lewis's Sutherland, Stat. Constr. (2d ed.), §405.

When the act of 1905, *supra,* is so read and construed, it embraces "but one subject and matters properly connected therewith, which subject" is expressed in the title, as required by said article 4, §19, of the state Constitution. It follows that said act is not unconstitutional upon any of the grounds urged by appellee.

A further objection to the act of 1905, *supra,* is that the "act of March 3, 1893 (Acts 1893, p. 196), and the amendments thereto, referred to in section three of the act of 1905 (Acts 1905, p. 493, §6818 Burns 1905), were repealed by section fourteen of the act of March 11, 1901 (Acts 1901, p. 449, §6912 Burns 1901), and were not in force when said act of 1905 was passed, and could not be revived and made a part of the act of 1905, as was attempted." It is provided in §6818, *supra,* that if the board of commissioners before whom the petition is pending shall find that it is sufficient, and in compliance with the provisions of this act they shall establish said improvement and order the same to be constructed, and the status of such improvement shall be exactly the same as any proposed improvement that had been "regularly petitioned for and voted upon at an election regularly held under the provisions of said act of March 3, 1893, and the amendments thereto, or under an act approved March 11, 1901, and returns regularly made by the proper election officers in favor thereof." This was not an attempt to adopt the acts mentioned as a part of the act of 1905, *supra,* as claimed by appellee, but to furnish means of determining the status of the proceeding under said act of 1905, when the board ordered the improvement to be constructed. The status of the proceeding after the return of the proper election officers, showing that the election carried in favor of the improvement, is the same under the act of 1901, *supra,* as it is under the act of 1893, *supra,* and the amendments thereto, and the status thereof could be determined from an examination of either one of said acts. Even if the reference to the act of 1893, *supra,* and the amendments thereto, were eliminated from section three of said act of 1905, the status of the proceedings at the time mentioned could be determined from said act of March 11, 1901. It is evident therefore that the repeal of said act of March 3, 1893, and the amendments thereto, prior to the enactment of said act of 1905, could not affect the validity of the last-named act.

Whether said act of 1893 and the amendments thereto, if repealed as claimed, could be examined to ascertain the status of the proceeding after the return of the election officers, showing that the people had voted in favor of the improvement, we need not determine.

It is next insisted that said act of 1905 (Acts 1905, p. 493, §§6816-6822 Burns 1905) was repealed by "an act concerning highways," approved March 8, 1905 (Acts 1905, p. 521, §6726 *et seq.* Burns 1905), section sixty of which (§6786 Burns 1905) provides for the construction of county-line highways, without regard to their length, to be paid for by assessment of benefits to the lands "within two miles on each side of such line," under the rule declared by this court in *Findling* v. *Foster* (1908), *ante,* 325. The rule declared in that case is, that "while repeals of statutes by implication are not favored, it is well settled that when a new statute was intended to furnish the exclusive rule on a certain subject, it repeals by implication the old law on the same subject, or when a new statute covers the whole subject-matter of an old one, and adds new provisions and makes changes, and where such new law, whether it be in the form of an amendment or otherwise, is evidently intended to be a revision of the old, it repeals the old law by implication." Said two acts were passed at the same session of the legislature (the session of 1905), without any repealing clauses and without emergency clauses, and therefore took effect at the same time—April 15, 1905. The act in controversy, although passed last, was approved first—March 7, 1905— while the other act was approved March 8, 1905. When two acts are passed at the same session of the legislature the presumption is strong against implied repeal, and effect must be given to each, if possible; but, if the two are irreconcilable, the one which was approved last will prevail, even if both took effect on the same day. 26 Am. and Eng. Ency. Law (2d ed.), 736; *Blumenthal* v. *Tibbits* (1903), 160 Ind. 70, 72, 73; *State* v. *Rackley* (1829), 2 Blackf. 249; *Davis* v.

*Whidden* (1897), 117 Cal. 618; *State, ex rel.,* v. *Halliday* (1900), 63 Ohio St. 165; *Rex* v. *Justices of Middlesex* (1831), 2 Barn. & Ad. 818, 1 Dowl. P. C. 116; 1 Lewis's Sutherland, Stat. Constr. (2d ed.), §§180, 247, 267, 268; Wilberforce, Stat. Law, 315; Potter's Dwarris, Statutes, 170.

Said acts are not irreconcilable, nor is there in the law last approved anything from which we can say that it was the legislative intent thereby to repeal the other by implication, or otherwise. The act of 1905 (Acts 1905, p. 493, §§6816-6822 Burns 1905), in controversy in this case, provides for the improvement of unimproved highways on county lines, not to exceed three miles in length, to be paid for by a tax on all the property, real and personal, in the taxing district, while section sixty of the "act concerning highways" (§7709 Burns 1908, Acts 1905, p. 521), provides for the improvement of county-line highways, without regard to length, to be paid for by assessment of benefits to the lands within a taxing district of two miles on each side of such highway.

In *Sefton* v. *Board, etc.* (1903), 160 Ind. 357, it was claimed that the act of 1889 (Acts 1889, p. 433, §6792 *et seq.* Burns 1901), providing for the improvement of county-line highways by special assessments of benefits on the lands within the taxing district, was repealed by the act of March 6, 1899 (Acts 1899, p. 468, §6914 *et seq.* Burns 1901) which provided for the improvement of county-line highways by a tax on all the property in the townships of the taxing district. This court held in that case "that two different systems were created by said acts, and that the first act was not repealed.

Upon the authority of *Sefton* v. *Board, etc., supra,* we hold that said two acts of 1905, created two different systems for the improvement of county-line highways, and that the one in controversy in this case was not repealed by the other. This was the view taken by the legisla-

ture of 1907, as shown by an act for the improvement of county-line highways (Acts 1907, p. 363, §7740 *et seq.* Burns 1908). Section fourteen of said act repealed the act of 1905 in controversy in this case (Acts 1905, p. 493) in express terms, but continued the same in force for the purpose of completing all improvements in proceedings then pending under said act. It is evident that said act is not open to any of the objections urged against it.

It is clear that any and all orders of appellee, attempting to set aside and vacate any of its own proceedings, orders or the proceedings of the boards of the two counties, or to set aside or vacate any act or order of either or both of said boards, were without authority and void, and of no effect.

It follows that the court erred in sustaining the demurrer to the petition and alternative writ. Judgment reversed, with instructions to overrule the demurrer to the petition and alternative writ, and for further proceedings not inconsistent with this opinion.