Denton *et al. v.* Thompson *et al.*

◆

No. 16,177.

DENTON ET AL. *v.* THOMPSON ET AL.

DRAINAGE.—*Appeal from Board of Commissioners.—Neglect of Auditor in Filing Transcript, etc.*—In an appeal from the board of county commissioners, in a drainage proceeding, where the appellants have complied with the law the failure of the auditor to certify a transcript of the proceeding and appeal-bond with the clerk within the time prescribed by statute will not affect the rights of the appellants.

SAME.—*Appeal to Circuit Court.—Delay in Appeal.—Affidavit of Auditor.*—In such case, the record as certified to the clerk can not be contradicted by an *ex parte* affidavit of the auditor, to the effect that the delay was caused by the procurement of the appellees.

SAME.—*Affecting Two or More Counties.—Court of Original Jurisdiction.—Appeal, Where Taken.—Harmless Error.*—In a drainage proceeding affecting land-owners in two or more counties, the board of commissioners of the county containing the head or source of the proposed ditch is given original jurisdiction of the entire drain, and an appeal in such case, from such board of commissioners, must be to the court of the county whose board of commissioners is given original jurisdiction; and where remonstrants to such proceeding have joined in an appeal to the court of the county of original jurisdiction (designated A.), and part also appeal to the circuit court of the county of their residence (designated B.), a motion to dismiss the latter appeal for want of jurisdiction, and because of the pendency of the appeal to A., should be sustained. However, any error which may have been committed in the refusal to dismiss, or errors otherwise affecting the separate appeals, was rendered harmless where the appeal to A. was taken on change of venue to B., and the two appeals there consolidated.

SAME.— *Viewers, Report.—Finding of Board.—Appeal.—Dismissal of.*—Where viewers, in a drainage proceeding, report that the proposed drain (describing the same) will be of public utility; that the assess-

*Denton et al. v. Thompson et al.*

ments made for the construction of the ditch are equal to the benefits to be derived therefrom, all of which is sustained by the report of the reviewers, being in substantial compliance with the statute, and not being controverted by any evidence, and the construction of the ditch being ordered by the board of commissioners, it must be presumed that the action of the board was correct, and that the circuit court erred in dismissing the proceedings on appeal.

SAME.—*Burden of Proof.—Remonstrants.—Appeal.—Dismissal of.*—The onus is upon the remonstrants who appeal from the order of the board establishing the ditch, to show the errors, if any, in the reports made to the commissioners; and it is not enough to object to the correctness of the reports, or even state definite objections, to justify a dismissal of appeal, but proof should be adduced to show that the reports and the action of the board were, in fact, erroneous.

SAME.—*Viewers, Report.— Costs of Construction not Divisible.*—The report of viewers, that the benefits to be derived from the construction of a drain equal the costs of construction, must be held to include the whole cost of construction, of whatever kind, as the statute does not require a separation of the items of cost.

SAME.—*Along Line of Former Ditch.—Costs and Benefits.*—The fact that a former ditch, or a natural watercourse, or a depression in the ground, is found along the line of a proposed ditch, merely affects the question of the costs and benefits of the proposed work.

From the Jasper Circuit Court.

*W. S. Hartman, W. H. Hamelle* and *T. F. Palmer*, for appellants.

*S. P. Thompson*, for appellees.

HOWARD, J.—This was a proceeding before the county commissioners, for the construction of a public ditch in the counties of White and Jasper. The petition was filed by the appellants February 4, 1890, in the office of the auditor of White county, the county containing the source of the proposed ditch, as required by section 4308, R. S. 1881, for the construction of drains in two or more counties. Bond was given, viewers were appointed and made report, and notice was given, all as required by the statute.

Of the appellees, those residing in White county filed their remonstrance and bond for costs with the auditor

of that county, and those residing in Jasper county did in like manner with the auditor of Jasper county, which bonds were approved by the joint boards of county commissioners of both counties, and a copy of each remonstrance and bond was transmitted to the auditor of the other county. Reviewers were appointed, who reported in favor of the viewers' report. All as provided in section 4311 of said statutes.

At the December term, 1890, at a joint session of the boards of commissioners of both counties, held at Monticello, the county seat of White county, the appellees filed written motions to set aside the reports of the viewers and reviewers. These motions were overruled, and the ditch was established by the joint boards, on the report of the viewers, as confirmed by that of the reviewers. Thereupon the appellees filed written notices of appeal to the circuit court.

On December 15, 1890, the appellees residing in Jasper county filed their appeal-bond with the county auditor of White county, which was approved by the auditor and clerk and a certified copy transmitted to the auditor of Jasper county, where it was disapproved.

On December 27, 1890, the appellees residing in White county filed a like bond of appeal with the auditor of White county, which was also approved by the auditor and clerk.

On February 11, 1891, the auditor of White county filed the transcript and papers in his office with the clerk of the White Circuit Court, and on February 23, 1891, the auditor of Jasper county also filed the transcript and papers in his office with the clerk of the Jasper Circuit Court.

In the White Circuit Court the appellees residing in White county moved for a change of venue to Jasper county, which was granted. During the pendency in

Denton *et al. v.* Thompson *et al.*

the White Circuit Court of the motion for a change of venue, the appellants moved to dismiss the appeal in that court, for the reason that the transcript had not been filed within twenty days after the filing of the appeal bond. With their motion to dismiss the appeal, the appellants also filed an affidavit by the deputy auditor of White county, to the effect that this delay was by the procurement of the appellees. The motion so made to dismiss the appeal was overruled.

At the March term, 1891, of the Jasper Circuit Court, the appellants entered a special appearance in the separate appeal therein of the appellees residing in Jasper county, and moved to dismiss that appeal for the reason that the source of the ditch being in White county, the White Circuit Court had sole jurisdiction of the appeal, without regard to the residence of the remonstrants; and for the additional reason that the remonstrants residing in Jasper county, having filed their appeal-bond with the auditor of White county, they had thus appealed to and placed themselves under the jurisdiction of the White Circuit Court, and could not, therefore, also appeal to the Jasper Circuit Court. The motion to dismiss this appeal was also overruled.

The appellees residing in Jasper county then moved for leave to file a supplemental transcript of appeal bond from the clerk of White county, and to be made parties defendant with the remaining appellees in the cause on change of venue from White county. This motion was overruled.

The appellees resident in Jasper county also moved to dismiss the cause as appealed by them to the Jasper Circuit Court, which motion was also overruled; and the court then, on its own motion, consolidated the two appeals.

Vol. 136—29

Afterwards the appellees united in a motion to dismiss all the proceedings "for the reason that the reports of the viewers and reviewers herein do not describe the lands benefited by the proposed work, and for the reason that said reports do not specify the manner in which the work shall be done."

While this motion was under advisement the appellees further moved the court to dismiss the proceedings "for the reason that the reports of viewers show that the costs of the proposed work will exceed the benefits thereof."

The court sustained these motions in the following order: "And it appearing to the court that the same objections now included in said motion and motions heretofore made to dismiss the proceedings herein were made before the board of county commissioners, said motions are now sustained."

From this action of the court the appellants appeal.

Appellants have assigned fifteen errors, as in the record, which are, however, discussed in their briefs under three heads:

1. That the White Circuit Court erred in overruling appellants' motion to dismiss the appeal to said court of Benjamin A. and J. Q. Linville, appellees resident in White county.

2. That the Jasper Circuit Court erred in overruling appellants' motion to dismiss the appeal to that court of Alfred Thompson, Simon P. Thompson, Alfred McCoy, and Mattie Rinehart, appellees resident in Jasper county.

3. That the court erred in sustaining appellees' motion to dismiss the proceedings.

Appellees have assigned as cross-error:

That the court erred in overruling the motion of the appellees Alfred Thompson, Simon P. Thompson, Alfred

McCoy, and Mattie Rinehart to amend the transcript from the White Circuit Court.

As to the first alleged error, the record shows, that the judgment of the joint boards of commissioners establishing the ditch was rendered December 3, 1890; that the appeal bond of the appellees Linville was filed December 27, 1890, and that the auditor of White county filed the transcript and papers in the White Circuit Court on the 11th day of February, 1891.

The statute, section 4301, R. S. 1881, provides that an appeal bond, in a case like this, shall be filed within thirty days after the final order of the board, and that within twenty days after the filing of the appeal bond the auditor shall make a transcript of the proceedings and appeal bond and certify the same to the clerk of the circuit court. It appears that in this case the appeal bond was filed in time, but that the auditor neglected his duty in not filing the transcript and papers within the time prescribed by the statute.

It has frequently been decided that where the party appealing himself complies with the law, the failure of an officer to file the papers within the time fixed by law will not affect the rights of the appellant. *Gumberts* v. *Adams Express Co.*, 28 Ind. 181; *Day* v. *Herod,* 33 Ind. 197; *Barnett* v. *Gilmore,* 33 Ind. 199; *State, ex rel.,* v. *Cressinger,* 88 Ind. 499.

Appellants, however, contend that the rule laid down in those cases is not applicable in this case, since it appears from the affidavit of the deputy auditor, that the delay of the auditor in filing the papers was due to instructions given by the appellees, and we are referred to *Baumbauer* v. *State,* 76 Ind. 351, in support of this contention.

That was a case in which the transcript filed in the circuit court by the mayor of a city showed, upon its

face, that the mayor had delayed the filing of the transcript and papers at the request and by the instructions of the appellant; and it was accordingly held that the appellant was bound by his own act as so shown by the record.

In this case the transcript shows nothing of any such request or instructions, and we do not think that the record so made can be contradicted by an *ex parte* affidavit such as that referred to by appellants. And while there might be a case where a long continued and unreasonable delay by an official in certifying a transcript could be properly charged to some act or request of the party appealing, yet we think that, in general, such act or request of the appealing party would, so far as applicable, be available only to the official by way of palliation for his own neglect of duty, and that the party liable to be injured by the delay would find all needed protection in a mandate against the official to send up the papers.

In this case, moreover, no harm was done. The transcript was on file in the clerk's office in ample time for use in the circuit court.

In support of the contention that the Jasper Circuit Court erred in overruling appellants' motion to dismiss the appeal to that court, of Alfred Thompson and others, residents of Jasper county, it is said by counsel, that the proposed drain is an entirety in both counties, and that there could, therefore, be but one authority in control of the whole work, one jurisdiction, hence an appeal to but one court.

It has been frequently held by this court, that under the act of 1881, for the construction of public drains under authority of the circuit court, the drain is a unit throughout all the counties into which it may extend, and is under the jurisdiction of the court where the pro-

ceedings were first instituted. *Fleenor* v. *Driskill*, 97 Ind. 27; *Crist* v. *State, ex rel.*, 97 Ind. 389; *State, for Use,* v. *Turvey*, 99 Ind. 599; *Meranda* v. *Spurlin*, 100 Ind. 380; *Updegraff* v. *Palmer*, 107 Ind. 181; *Hudson* v. *Bunch*, 116 Ind. 63; *Crooks, Aud.*, v. *State, ex rel.*, 126 Ind. 572.

We think that a like rule must obtain where drains are constructed under authority of boards of commissioners, and where the drain extends into two or more counties. A public drain is, from its very nature, an entirety; and though it may extend into two or more counties, yet the proceedings must be under one authority. Otherwise, a board of commissioners or a circuit court having jurisdiction at the source of a drain, might order its construction, while the board or court having jurisdiction at the outlet, or at some intermediate point, might determine that there should be no drain established.

The Legislature did not contemplate any such absurd result, but, both in the circuit court act and in the act for the construction of drains by the county commissioners, has, as we think, provided for one jurisdiction over the whole work.

In the first named act, the jurisdiction is in the court of the county in which the land of the petitioner is situated, and such court has sole jurisdiction throughout all the counties into which the ditch extends, from the source to the outlet.

In the act for the construction of public drains in two or more counties, under authority of boards of county commissioners, a like control is plainly contemplated. It is provided in that act that the petition, when signed by one or more of the land-owners of each county, who is liable for assessment, shall be "filed with the auditor of the county containing the head or source of the proposed

ditch.'' It is further provided in the act, that ''the board of commissioners of the county where the petition is filed'' shall designate the place of meeting of the joint viewers appointed by the commissioners of each county. And as to remonstrances, although each person remonstrating is required to file his remonstrance with the auditor of the county of his residence, yet each such remonstrance and the bond for costs accompanying it, are to be certified to the auditors of the other counties interested; and it is further made ''the duty of the auditor of the county in which the time and place for the meeting of the viewers and reviewers is fixed, to notify the auditors of the other counties interested of such time and place for the joint viewers and reviewers to meet.''

It is very clear, therefore, that the Legislature, in all the steps to be taken where there might be a conflict of authority, expressly provided that the jurisdiction should remain in the county containing the head or source of the proposed ditch, and with whose auditor the petition is filed. And, as the drain is an entirety, and as, consequently, there can be but one court having jurisdiction on appeal, although the statute has not expressly said to what court an appeal shall lie, yet the irresistible inference is that it must be to the court of the county to whose board of commissioners is given original jurisdiction.

Another reason why the jurisdiction in this case as to all those appealing from the boards of commissioners was in the White Circuit Court is, that all the parties had first filed their appeal-bonds with the auditor of White county, which bonds were approved by the auditor and clerk of that county, as provided by the statute in case of appeals. By the act of thus filing their appeal-bonds their appeal was made to the White Circuit Court, and they thereby submitted themselves to the jurisdiction of that court. That court having thus acquired

jurisdiction in the appeal from the boards, as to all the parties appealing, there could be no appeal to another court.   Jurisdiction had attached in the White Circuit Court.

We, therefore, conclude that the Jasper Circuit Court erred in overruling appellants' motion to dismiss the appeal to that court, of Alfred Thompson and others, resident in Jasper county.

As, however, the said Alfred Thompson and others, by filing their appeal-bond with the auditor of White county, had duly appealed to the White Circuit Court, which appeal was at the time, by change of venue, in the Jasper Circuit Court; and as the Jasper Circuit Court, by consolidation of both appeals, virtually made said Alfred Thompson and others parties to the appeal, it is evident that no harm was done by overruling appellants' motion to dismiss the appeal to the Jasper Circuit Court. Alfred Thompson and others, resident in Jasper county, having duly appealed to the White Circuit Court, were entitled to be made parties, and were in fact parties to that appeal, on the change of venue to Jasper county. As remonstrants, after appealing to the White Circuit Court, they had, by their attempted appeal to the Jasper Circuit Court, improperly separated themselves from the remaining remonstrants; but, on the change of venue, the Jasper Circuit Court, although by an irregular proceeding, properly brought all the remonstrants together again.

We may here conveniently consider the assignment of cross-error by the appellees.   By this assignment the appellees complain of the action of the court in overruling the motion of the remonstrants residing in Jasper county to be allowed to file a supplemental transcript showing their appeal to the White Circuit Court.   We think this motion should have been allowed, but the ac-

tion of the court in overruling the motion has done these appellees no harm; since, by the subsequent action of the court in consolidating the cases, as we have already seen, these appellees were made parties to the proceed-ings upon the appeal in the White Circuit Court taken on change of venue to Jasper county. This would have been all that these appellees could have got by a ruling of the court sustaining their motion to file a supple-mental or amended transcript from the White Circuit Court.

It remains to inquire whether the court erred in sus-taining appellees' motion to dismiss the proceedings.

While the correctness of the conclusions reached by the viewers and reviewers was questioned before the com-missioners, and was therefore proper matter for consid-eration *de novo* in the circuit court, yet the record dis-closes no evidence to show any reason why the findings and assessments set forth in the reports are not correct. It was not enough to object to the correctness of the re-ports, or even to state definite objections, but proof should be adduced to show that the reports of the viewers and reviewers and the action of the boards of commissioners, in ordering the work established, were in fact erroneous. Mere allegations without proof will not do. And be-cause the objections were made before the commissioners, it by no means follows that the proceedings should be dismissed on appeal to the circuit court. As well might one who, before a justice of the peace, had answered by plea of payment to a complaint on a note, ask in the circuit court to have the case dismissed on the appeal, simply because his plea had been brought to the atten-tion of the justice. The reports of the viewers and re-viewers, and the objections made thereto by the remon-strants before the commissioners, were before the circuit court on the appeal, for consideration.

The record shows that the joint boards of commissioners overruled the objections to the reports as made before the boards, and found with the reports that the ditch would be of public benefit and utility, and thereupon ordered the work established as reported. All the findings in the record, as made in the commissioners' court, are therefore in favor of the reports of the viewers and reviewers, and in favor of the work as established by the boards.

The burden of proof was upon the remonstrants who appealed from the order of the boards establishing the ditch, to show the errors, if any, in the reports made to the commissioners. *Daggy* v. *Coats,* 19 Ind. 259; *Metty* v. *Marsh,* 124 Ind. 18.

There is, however, no evidence shown, either before the boards or before the court, that the findings were incorrect. We are, therefore, to take all the findings ·in the reports as true; and in case there is no finding on any question raised by the remonstrants, we are to take the finding to be as against the remonstrants, on whom was the burden to establish any finding to the contrary.

In addition to this, the reports made show on their face that the findings were in accordance with the requirements of the statute, and that the action of the joint boards in ordering the work established was correct.

An appeal lies from such order of the boards, as provided in section 4301, R. S. 1881, only in respect to the following matters:

"*First.* Whether said ditch will be conducive to the public health, convenience, or welfare.

"*Second.* Whether the route thereof is practicable.

"*Third.* Whether the assessments made for the construction of the ditch are in proportion to the benefits to be derived therefrom.

"*Fourth.* The amount of damages allowed to any person or persons or corporation."

The viewers report that, "after a careful examination of the entire premises, we are of the opinion that the ditch as herein described and located would be of public utility."

They found "that a proper work to accomplish the drainage required would be the construction of an open ditch described as follows, to wit": (as set out in the report).

They find that the assessments made for the construction of the ditch are equal to the benefits to be derived therefrom, being $5,031.77 each.

They find no damages to any one, and we must infer that there was none. The report so made was sustained in all things by the report of the reviewers.

These findings in the reports are all in substantial compliance with the requirements of the statute, and are not controverted by any evidence. We must, therefore, conclude that the action of the boards in ordering the work established was correct, and that the court erred in dismissing the proceedings.

The appellees seem to think that the report of the viewers shows that the cost of the work will be greater than the benefits, for the reason that no provision is made for fees of officers and those in charge of the work. The statute makes no separation of the items that go to make up the whole cost for the construction of the ditch, and the assessments made by the viewers, and which are equal to, and therefore in proportion to, the benefits, are made to cover all costs of construction. There is no other reasonable interpretation of the finding in the report. *Grimes* v. *Coe,* 102 Ind. 406.

Appellees also make particular objection to the report,

for the reason that it does not make allowance of damages for running the ditch along the line of a former old ditch.

As was said by this court, in relation to the construction of a drain under authority of the circuit court, in the case of *Meranda* v. *Spurlin, supra,* we know of no reason under the constitution or the statutes of the State why a public drain may not be laid on or along the line of a drain formerly constructed under authority of the court or the board of county commissioners. It is much like the case of repaving or other improvement of streets or sidewalks in a city, which had formerly been improved. Improvements once made may not last forever. Besides, the fact that an improvement has once been made does not necessarily imply that another, and perhaps a better, improvement should not take the place of the former. The question in each instance is, rather, whether the viewers and reviewers have made their assessments in proportion to the benefits. The fact that a former ditch, or a natural watercourse, or a depression in the ground, is found along the line of the proposed improvement, merely goes to the question of the costs and benefits of the proposed work.

We think that the court should have tried and determined the matters brought in issue before the county commissioners. Evidence, if any, offered in favor of or against the proposed work, or in favor of or against any modifications of the reports of the viewers and reviewers, should have been received and considered; and if no evidence, or no sufficient evidence, should be adduced to change or modify the reports, we think they should have been confirmed and the work ordered established by the court. *Hardy* v. *McKinney,* 107 Ind. 364; *Metty* v. *Marsh,* 124 Ind. 18; *Mills* v. *Hardy,* 128 Ind. 311.

The judgment is reversed, with directions to overrule appellees' motion to dismiss the proceedings, and for further proceedings in accordance with this opinion.

Filed Nov. 9, 1893; petition for a rehearing overruled Jan. 24, 1894.