[S. F. No. 11491. In Bank.—July 16, 1925.]

## SACRAMENTO AND SAN JOAQUIN DRAINAGE DISTRICT, Petitioner, v. THE SUPERIOR COURT OF THE COUNTY OF COLUSA et al., Respondents.

**[1]** DRAINAGE DISTRICTS—ACTION BY LAND OWNER—PROHIBITION—DENIALS IN ANSWERS TO APPLICATION FOR WRIT—EFFECT OF—PLEADING.—In a proceeding in prohibition by a drainage district to restrain further proceedings in an action by a land owner against the governing board of the drainage district, the denials contained in the answers to the application for the writ of prohibition that the petitioner is or ever was a public agency or mandatory, or was ever created or ever existed as such under or by virtue of the laws of the state or of the so-called "Reclamation Board Act," amount simply to demurrers to the sufficiency of that part of the petition wherein the facts of the organization of the petitioner as such public agency are specifically set forth with appropriate reference to the several statutes providing for its formation, and thus present no issue of fact.

[2] ID.—JUDGMENTS—PLEADING.—Section 456 of the Code of Civil Procedure has no application to the pleading of a judgment which is in form a judgment of a court of general jurisdiction.

[3] ID.—JUDGMENT VALIDATING ASSESSMENT—ALLEGATION IN APPLICATION FOR WRIT OF PROHIBITION—DENIALS—ISSUES.—In such proceeding, it was sufficient in the petition for a writ of prohibition to aver the making and entry of a judgment by the superior court validating assessments for reclamation work, and the averment therein that such judgment was duly given and made was mere surplusage and hence the denial of such averment, the making and entry of such judgment being admitted, would present no issue of fact; and the same principles of pleading apply as to the judgment of the supreme court affirming said judgment of the superior court, and hence denials that said judgment of the supreme court was *duly* given and made present no issue of fact.

[4] ID.—PLEADING—ISSUES.—In such proceeding, no issue of fact is presented by the averments in the answers to the petition that by either or both of the judgments of the superior court and supreme court the land owner has been denied due process of law and also the equal protection of the laws, as such averments or denials present but the pleaders' legal conclusions.

[5] ID. — "SUTTER-BUTTE BY-PASS ASSESSMENT No. 6" — JUDGMENT VALIDATING—COLLATERAL ATTACK.—The judgment of the superior court of Sutter County, validating "Sutter-Butte By-Pass Assessment No. 6," which is in precise form attached as an exhibit to the petition for a writ of prohibition to enjoin further proceedings in an action commenced in Colusa County by a land owner to declare the proceedings relating to such assessment and the sale of bonds void, and which in such form the respondents admit to have been given and made, appears on the face thereof to be a valid ·judgment of said court of Sutter County, and being such, it cannot successfully be made the subject of collateral attack.

[6] ID.—ACTIONS INVOLVING VALIDITY OF ASSESSMENTS—COUNTY OF EXCLUSIVE JURISDICTION — BONDING ACT — CONSTRUCTION OF.—In enacting sections 4, 12, and 32 of the act entitled "An act to authorize the issuance and sale of bonds of the Sacramento and San Joaquin Drainage District based upon assessments levied by the reclamation board upon land in said district," approved May 27, 1919 (Stats. 1919, p. 1092), and known as the "Bonding Act," which sections relate to the institution and maintenance of actions involving the validity of assessments or bonds, it was the intent of the legislature to render the jurisdiction of the superior court in and for the county wherein the proceedings provided for in said act for the validation of the assessment and bond issue are to be instituted and determined, that is, in the county within which the largest acreage of land affected by said assessment or issuance

of said bonds is situated, exclusive as to such determination, and to deprive the superior court of said or any other county within said drainage district or elsewhere of jurisdiction to thereafter entertain or determine any other action or proceeding involving the issue as to the validity of said assessment or of such bond issue.

[7] Id.—Superior Courts—Nature of—Constitutional Law.—The superior courts of the state, while located and functioning in the several counties of the state, are not local or county courts, but constitute a system of state courts, being vested with and exercising the judicial power of the state under the express terms of section 1 of article VI of the state constitution.

[8] Id.—Superior Court—Jurisdiction—Regulation by Legislature. While the constitutional jurisdiction and powers of the superior court as defined by section 5 of article VI of the constitution can in nowise be trenched upon, lessened, or limited by the legislature, it does not follow that the legislative department of the state government possesses no regulative power with relation to the jurisdiction of the superior courts of the state or to the method and procedure in and means of which the constitutional powers of these courts are to be exercised.

[9] Id.—Jurisdiction—Bonding Act—Constitutional Power of Superior Court not Invaded.—The provisions of the "Bonding Act," which purport to confine the jurisdiction of the superior court to hear and determine all questions touching the validity of the assessment upon the lands lying within the drainage district to the proceeding to be instituted thereunder in the county within which the largest area of such lands is located, and to declare that such proceeding shall be exclusive and the determination therein final, and to forbid the institution of any other action or proceeding in any of the other superior courts of the state, do not constitute a legislative entrenchment upon or invasion of the constitutional powers of the superior court in an action to quiet title by an owner of land within the drainage district, instituted in the superior court of the county where his land is situated and other than the county within which the largest area of land affected by the assessment is situated.

[10] Id.—Final Judgment Validating Assessment—Subsequent Action by Land Owner to Quiet Title—Prohibition.—A writ of prohibition will issue to prevent further proceedings in an action by an owner of land within the Sacramento and San Joaquin Drainage District, instituted in the superior court of Colusa County, where his land is situated, to quiet his title against the lien of an assessment levied by the drainage district, where in a proceeding in the nature of an action to quiet title to all of the lands lying within the boundaries of the drainage district, commenced by the drainage district in Sutter County, as provided by the terms of the Bonding Act, a final judgment had been obtained by said

district, and said land owner was a party to such proceeding, which was a proceeding *in rem*, wherein the constitutional requirement of "due process of law" was fully satisfied by the giving of notice in the form to the extent required by the statute authorizing such proceeding.

(1) 32 Cyc., p. 629, n. 94 New.   (2) 34 C. J., p. 1060, n. 14.   (3) 31 Cyc., p. 69, n. 87, p. 202, n. 24.   (4) 31 Cyc., p. 57, n. 39 New.   (5) 34 C. J., p. 514, n. 57 New.   (6) 15 C. J., p. 1133, n. 41, p. 1134, n. 55 New.   (7) 12 C. J., p. 816, n. 2.   (8) 12 C. J., p. 826, n. 73, 74.   (9) 12 C. J., p. 817, n. 9.   (10) 12 C. J., p. 1227, n. 6, 32 Cyc., p. 607, n. 54.

PROCEEDING in Prohibition to prevent further proceedings by the Superior Court of Colusa County in an action to quiet title and for an injunction.   Ernest Weyand, Judge Writ granted.

The facts are stated in the opinion of the court.

Stephen W. Downey for Petitioner.

J. W. Dorsey, Chas. S. Wheeler, Jr., and R. M. F. Soto for Respondents.

Devlin & Devlin, *Amici Curiae.*

RICHARDS, J.—The petitioner herein applied for a writ of prohibition whereby it seeks to have the respondent Superior Court in and for the County of Colusa, the judges thereof, and one Byron de la Beckwith restrained from taking any further proceedings in a certain action pending in said court, entitled *Byron de la Beckwith, also Known as B. D. Beckwith, Plaintiff,* v. *Reclamation Board of the State of California et al., Defendant,* and decreeing that all proceedings theretofore taken by said court are null and void. The facts set forth in the application may be briefly stated to be these: The petitioner herein is a drainage district created and for several years past existing under and by virtue of an act of the legislature adopted in the year 1911 (Stats. 1911, Extra Sess., p. 117) and known as the "Reclamation Board Act" and the acts amendatory thereto, and by which original and amended acts the management and control of which drainage district was vested in the reclama-

196 Cal.—27

tion board of the state of California. That said drainage district embraces lands within several central and contiguous counties of the state of California, among which are the counties of Colusa, Sutter, and Butte. That thereafter and on November 6, 1917, the said reclamation board adopted a certain drainage and reclamation project known and designated as "Sutter-Butte By-Pass Project No. 6," and which embraced in its proposed expenditures for reclamation and drainage purposes the several counties above named and others, and embraced the lands of the respondent Beckwith herein. That thereafter and pursuant to the carrying forward of said project and on September 17, 1920, the said reclamation board passed a certain resolution and order for the levy of an assessment upon the lands within said district amounting to the total sum of $8,155,988.70, said assessment to be known as "Sutter-Butte By-Pass Assessment No. 6"; and that thereafter and in the course of making said assessment said board appointed certain assessors for the purpose of making and placing the same upon all of the lands within said district, and which assessors did make said assessment, and in so doing prepared separate lists of the lands so assessed in each of the counties wherein such lands were situated, which said assessment lists were by the secretary of said reclamation board forwarded to and filed with the treasurers respectively of each county in which the lands affected thereby were situated, and which said lists remained open for public inspection for the period of thirty days. That thereafter said board duly appointed a time and place for the purpose of hearing objections to said assessment, of which due notice was given in each of the said counties affected thereby and at which time and place such objections were heard and acted upon, and that thereafter and on March 25, 1921, said board duly passed and adopted its order and resolution approving and equalizing said assessment, and whereby the same was finally approved, fixed, apportioned, and equalized so as to amount to the sum of $8,144,327.33. That thereupon the said board determined that in its judgment it would be for the best interests of the owners of land within said district affected by said assessment to issue bonds in said amount for the purpose of obtaining money for the payment of the cost of the work and other expenditures for which said assessment had been levied.

That pursuant thereto and acting under and in accordance with the terms and provisions of an act entitled ''An act to authorize the issuance and sale of bonds of the Sacramento and San Joaquin Drainage District based upon assessments levied by the reclamation board upon land in said district,'' approved May 27, 1919 (Stats. 1919, p. 1092), and known as the ''Bonding Act,'' the said reclamation board commenced a judicial proceeding in the Superior Court of the State of California in and for the County of Sutter, which is the county within which the largest acreage of land affected by said assessment is situate, for the validation of said assessment as provided in said act.   That thereafter said judicial proceeding was prosecuted as provided in said Bonding Act, with the result that on the fifth day of April, 1922, a judgment was duly given, made, and entered in said proceeding approving and validating said assessment. That thereafter an appeal from said judgment was taken by certain parties to said proceeding to the supreme court of the state of California and was heard therein, and that said court upon such hearing and on August 22, 1923, by its decision duly given and made, affirmed said judgment, validating said assessment and the whole thereof.   That thereafter certain parties to said judicial proceeding procured a writ of error to issue for a review of such judgment by the United States supreme court, and that thereafter the said United States supreme court by its order and judgment duly given and made dismissed said writ of error.   That subsequent to the date of said judgment and on or about the twenty-fifth day of April, 1922, the said reclamation board directed and procured the filing of the assessment lists aforesaid in the offices of the county treasurers of said respective counties, the lands within which were affected thereby; whereupon collections upon said assessment amounting to more than $127,641.95 were paid over to said county treasurers by landholders within their respective counties. Thereafter and on September 22, 1922, and pursuant to the provisions of said ''Bonding Act,'' the reclamation board, by its orders duly given and made, called and held a bond election within that portion of said drainage district affected by said assessment to determine whether the money required to pay the cost of the works and expenditures for which said assessment had been provided should

be raised by calls to be made upon such assessment, or whether bonds of said drainage district should be issued in an amount equal to the amount thereof then remaining unpaid. That at said election the majority of the votes cast were in favor of the issuance of said bonds. That thereafter the interest which said bonds were to bear was fixed by said board at five and one-half per cent per annum, payable semi-annually, and said bonds bearing such rate of interest were prepared and executed in accordance with said Bonding Act and the order of said board, and were on the ninth day of January, 1923, deposited with the treasurer of the state of California as in said act provided and in the aggregate amount of $8,028,147.75. That within ten days after said bonds had been so delivered the said reclamation board, in pursuance of its order duly given and made, commenced an action in the Superior Court of the State of California in and for the County of Sutter against the lands and all persons owning the same or interested therein within that portion of said drainage district affected by said assessment or the issuance of said bonds, to have it determined that said bonds were and are a legal obligation upon said drainage district. That thereafter such proceedings were had in said action that on the twenty-seventh day of November, 1923, a judgment was duly given and made therein, decreeing that said bonds were in all respects valid. That thereafter certain of said bonds were canceled pursuant to the terms of a certain act of the legislature amending section 34 of the aforesaid "Reclamation Board Act," adopted in 1923, leaving duly executed and uncancelled bonds of such issue in the state treasury in the total sum of $7,133,000. That thereafter and on the twenty-third day of December, 1924, the said reclamation board, in accordance with law, directed the state treasurer to offer said bonds and the whole remaining amount thereof for sale. That thereafter and pursuant to said direction and order of said board the state treasurer duly published notice that at the time designated therein he would offer said bonds for sale and would sell the same. That on the twenty-fourth day of January, 1925, Byron De la Beckwith, also known as B. D. Beckwith, one of the respondents herein, commenced an action in the Superior Court of the State of California in and for the County of Colusa against the said reclamation board

and the members thereof and also against the said state treasurer, entitled in the caption of the complaint therein a "Complaint to quiet title and for injunction." That said plaintiff in said complaint in substance alleged himself to be the owner of certain real property in the said county of Colusa and within the territorial limits of said drainage district; and that said reclamation board claims to have some legal title or interest therein arising out of the facts above set forth herein relating to the creation, levy, and imposition of the assessment or assessments hereinabove referred to upon and affecting the lands within said district, and specifically the said lands of the plaintiff therein; and that said board had further caused to be executed and issued and were about to sell said bonds in an amount to cover the unpaid portion of said assessment or assessments and that said assessment or assessments and the said bonds had been purported to be validated by the judgment of the Superior Court in and for the County of Sutter as hereinabove set forth; and that said bonds were offered for sale and that thereby a cloud would be cast upon the title of the said plaintiff to his aforesaid lands. That the said claim of the said reclamation board to have or impose the lien of said assessment upon the plaintiff's said lands is without foundation in either law or equity, and that all of the acts and things done by said board looking to the imposition of such lien upon the plaintiff's said lands are illegal and void and in contravention of the fourteenth amendment to the constitution of the United States, and without due process of law. Wherefore the said plaintiff prayed that his title be quieted against the aforesaid claims of said reclamation board and that an injunction issue against the said state treasurer preventing his or any sale of said bonds, and that all proceedings leading up to the validation of said assessment or of said bonds and to the sale thereof be declared null and void; and for general relief. Thereupon and after the said institution of said action the present proceeding for the procurement of a writ of prohibition against said plaintiff and said Superior Court of Colusa County and the judges thereof, preventing any further proceedings in said action and nullifying such proceedings as had theretofore been taken or had therein was commenced in this court and

has been brought on to hearing and to the point of a determination herein.

The respondents herein filed separate answers to said petition, which are, however, identical in form. [1] Their first denials were that the petitioner is or ever was a public agency or mandatory, or was ever created or ever existed as such under or by virtue of the laws of California or of the so-called "Reclamation Board Act." These denials amount simply to demurrers to the sufficiency of paragraph 1 of said petition wherein the facts of the organization of the petitioner as such public agency are specifically set forth with appropriate reference to the several statutes providing for its formation, and thus present no issue of fact. The respondents' second denials consist in admissions that there is of record the judgment of the Superior Court in and for the County of Sutter referred to in paragraph 1 of said petition and also attached thereto as an exhibit, but denies that said judgment was ever duly given, made, or entered; and alleges that said judgment denies to the respondent Beckwith due process of law and also the equal protection of the laws in violation of section 1 of the fourteenth amendment to the constitution of the United States. These denials also present no issues of fact. [2] The judgment referred to, the existence of which the respondents admit, is in form a judgment of a court of general jurisdiction. This being so, section 456 of the Code of Civil Procedure has no application to the pleading of said judgment. (*Weller* v. *Dickinson,* 93 Cal. 108 [28 Pac. 854]; *Clark* v. *Nordholt,* 121 Cal. 26 [53 Pac. 400]; *Ashton* v. *Heydenfeldt,* 124 Cal. 14 [56 Pac. 624]; *San Francisco etc. Land Co.* v. *Hartung,* 138 Cal. 223 [71 Pac. 337].) [3] It was therefore sufficient in said petition to aver the making and entry of such judgment. The averment therein that such judgment was duly given and made was mere surplusage and hence the denial of such averment, the making and entry of such judgment being admitted, would present no issue of fact. The same principles of pleading apply as to the judgment of this court affirming the aforesaid judgment of the Superior Court of the County of Sutter, and hence the respondents' denials that our said judgment was *duly* given and made present no issue of fact. [4] Neither is any issue of fact presented by the respondents' remaining aver-

ment that by either or both of said judgments the respondent Beckwith has been denied due process of law and also the equal protection of the laws. Such averments or denials present but the pleaders' legal conclusions.

It is the contention of the petitioner herein that pursuant to the acts of the legislature hereinabove referred to and to the proceedings taken and had thereunder, which are in their substance and sequence above set forth, and particularly of the judgment of the Superior Court in and for the County of Sutter, and of the affirmance thereof by this court and by the supreme court of the United States, and of the language of the act of the legislature providing for the procurement of such judgment and declaring the effect and finality thereof, the said Superior Court of the County of Colusa has no jurisdiction to entertain or proceed with said action pending therein, nor had the plaintiff therein any further right to commence, prosecute, or maintain such action; and hence that the writ sought herein should issue. In order to ascertain and properly determine the basis of this contention a more extended reference to the legislative acts in question and to the administrative and judicial proceedings taken thereunder and to the past conclusions and determinations of this court thereon must be made. With respect to the validity of the several and successive acts of the legislature beginning with the act of 1911, known as the "Reclamation Board Act," and the acts amendatory and supplementary thereto, continuing down to and including the so-called Bonding Act, this court has consistently upheld the validity of such legislation in so far as it has relation to the inception and carrying forward of the work of reclamation and flood control within the several counties and portions of the state of California affected by the provisions of said acts. It will not be necessary to refer more particularly to said legislation in its relation to the preliminary stages of reclamation and flood control within said drainage district rendering necessary and leading up to the creation and levy of the assessment in question, nor to refer to or restate the effect of the earlier decisions with relation to the validity of said legislation. We may, for the sake of brevity, come immediately to the act of the legislature adopted in the year 1919 and known as the "Bonding Act." Said act is entitled: "An act to authorize the issuance and sale of

bonds of the Sacramento and San Joaquin drainage district based upon assessments levied by the reclamation board upon lands in said district.'' By section 1 of said act reference is made to the preceding acts of the legislature providing for the creation of the reclamation board and defining its powers with relation to the work of reclamation and flood control and the expense thereof within said drainage district and to the creation and levy of an assessment or assessments upon the lands included within said district for the purpose of paying for such work and expenditures. Section 2 of said act provides:

''Whenever any assessment levied by the reclamation board upon lands within the Sacramento and San Joaquin Drainage District has been completed and all of the hearings before the reclamation board in regard thereto have been heard and the reclamation board is ready to make its order approving such assessment as finally fixed, as directed by section 13 of said reclamation board act, the reclamation board may at the time of making said order finally approving the assessment, and in and by said order and as a part thereof, also determine that in its judgment it would be for the best interests of the owners of land in the Sacramento and San Joaquin drainage district affected by said assessment to issue bonds for the purpose of obtaining money to pay the cost of the works or other expenses for which such assessment was levied; and if the reclamation board shall so determine in and by its said order, then the subsequent proceedings in and about the matter of such assessment and the collection thereof and all other proceedings for the raising of money to be used for the purposes for which said assessment was levied, shall be as in this act provided, notwithstanding any provision or provisions in regard thereto in said reclamation board act contained.''

Section 4 of said act provides:

''If the reclamation board shall in its order approving such assessment as finally fixed determine that in its judgment bonds should be issued as aforesaid, said board shall thereupon and within ten days after the passage of its said order commence a judicial proceeding for the validation of said assessment, which judicial proceeding shall be commenced, prosecuted and determined as hereinafter in sections five to thirteen, inclusive, of this act provided. During said

period of ten days no action or proceeding shall in such case be commenced by any party other than said reclamation board to contest or in any manner question or interfere with the validity of said assessment, nor shall any action be commenced to have the assessment upon any land modified or annulled as provided in section thirteen of the said reclamation board act; nor shall any such action or proceeding of any kind be commenced by any party other than the reclamation board at any time thereafter; *provided*, the reclamation board shall itself within said period of ten days have commenced said judicial proceeding to validate said assessment as herein provided.''

Section 5 of said act provides:

''Within said period of ten days after the passage by the reclamation board of its order approving said assessment as finally fixed by said board, the reclamation board shall commence in the superior court of the State of California in and for the county within which the largest acreage of land affected by said assessment is situate, a proceeding to validate said assessment, which proceeding shall be commenced by filing a copy of the assessment lists for said assessment together with a copy of said order of the reclamation board approving said assessment as finally fixed by said board, both duly attested by the certificate of the secretary or assistant secretary of the reclamation board, in the office of the county clerk and *ex-officio* clerk of the superior court in and for the county in which said proceeding is commenced. Thereupon the reclamation board shall notify the governor of the commencement of such proceeding and thereupon it shall be the duty of the governor to designate three judges of the superior court in the state of California, from counties or cities and counties wholly outside the said Sacramento and San Joaquin drainage district, and it shall be the duty of said three judges to sit in bank in said proceeding so commenced. Upon the filing of said assessment lists it shall be the duty of said county clerk to fix a time not less than thirty nor more than forty days from the date of such filing when objections will be heard to the said assessment lists, and thereupon it shall be the duty of said clerk to give notice of the time and place of such hearing by publishing a notice for once a week for four weeks in a newspaper of general circulation

published in each county in said drainage district wherein any lands affected by said assessment are situated, and if in the case of any such county no newspaper be published in the county, or if for any reason such notice cannot be published therein, then such notice shall be published in a newspaper of general circulation published in an adjoining county. Affidavits showing such publications shall, prior to such hearing, be filed with said county clerk.''

Section 7 of said act provides:

''At any time before the day for such hearing fixed in the notice published by said county clerk, any person interested in any land upon which any charge has been assessed in and by said assessment, may file in said proceeding written objections to said assessment, stating in detail the grounds therefor, which said statement shall be verified by the affidavit of such person or of some other person who is familiar with the facts.''

Section 8 of said act provides:

''At said hearing or any adjournment thereof, the said court shall hear such evidence as may be offered touching the correctness or validity of such assessment or the manner of its apportionment and as expeditiously as possible shall determine and pass upon all such written objections filed in said proceeding, and shall make and enter its judgment approving said assessment or annulling, modifying or amending the same or any part thereof. Such judgment shall refer to the assessment apportioned to each county separately and it shall be sufficient to refer to the portions of said assessment which are affected thereby. The decision of a majority of said court shall be final and conclusive, and no motion for a new trial of said proceeding shall be allowed, and no appeal from the judgment given and made by said court shall be had.''

Section 10 of said act provides:

''Thereupon and thereafter said assessment lists, unless annulled by the judgment in said judicial proceeding, embracing any modifications made by said judgment shall be conclusive evidence that said assessment has been apportioned according to the benefits that will accrue to each tract of land in such drainage district by reason of the expenditure of the sums of money to be raised thereby.''

It is conceded herein that the procedure provided for in the foregoing sections of the said Bonding Act were regularly followed and that pursuant thereto a judgment and decree of the Superior Court in and for the County of Sutter was made and entered purporting to validate said assessment as levied and apportioned under said preceding acts of the legislature and upon which and the validity thereof the bonds provided for in said Bonding Act were to be issued and sold. The question as to the nature and validity of the proceeding which resulted in said judgment of the Superior Court of the County of Sutter was first presented to this court in the case of *Athearn* v. *Nicol*, 187 Cal. 86 [200 Pac. 942], wherein this court was asked to prohibit the court and the judges who were proposing to sit therein from entertaining or taking action in said proceeding upon various grounds. In denying said writ this court decided that the said proceeding was a judicial proceeding over which the said Superior Court had been properly given jurisdiction, and that the provisions of the act of 1919, above quoted, relating to the sitting of several Superior Court judges therein for the purpose of determining the issues presented in such proceeding were valid and that such judges, when so sitting in said court under the provisions of said act, were sitting and acting as judges of the Superior Court of the State of California and not as a special board for the purpose of determining such issue. The writ was therefore denied. The next case wherein the question arose as to the nature, validity, or effect of the aforesaid proceeding was that entitled, *"In the Matter of a Proceeding to Validate Sutter-Butte By-Pass Assessment No. 6 of the Sacramento and San Joaquin Drainage District,"* 190 Cal. 532 [213 Pac. 974]. The questions discussed therein arose upon a motion to dismiss an appeal taken to this court from the judgment of the Superior Court of the County of Sutter in the said proceeding pending before it. In denying said motion this court held that the proceeding so pending in said court and from the judgment in which said appeal had been taken was a judicial proceeding which had all of the characteristics of a suit in equity to quiet title to land; and that as such the parties thereto could not by legislative enactment be denied their constitutional right of appeal. The next case wherein the similar

questions more broadly arose for discussion and determina-
tion was that arising upon the hearing on its merits of
said appeal, and is found reported under the same title
in 191 Cal. 650 [218 Pac. 27], wherein this court had before
it the whole subject of the interpretation to be given to
the foregoing sections of the "Bonding Act" and of the
nature, validity, and effect of the judgment which had
been rendered and entered by the Superior Court in and
for the County of Sutter in conformity therewith. In af-
firming said judgment this court approved what it had
tentatively determined in its decision upon the motion to
dismiss said appeal, to the effect that this proceeding was
in the nature of an action to quiet title to each and every
parcel of the lands affected by said assessment, whether
located within the county in which said proceeding was
pending or not, if within said drainage district; and that
being such it was in the nature of a proceeding *in rem,*
wherein the constitutional requirement of *due* process of
law was subserved and satisfied by the giving of the notices
of the pendency of such proceeding required by the statute
authorizing the same, citing the long line of cases in this
and other jurisdictions sustaining such procedure. The
sufficiency of the notices given in the course of such pro-
ceeding was also considered and upheld by this court, as
were also a number of other objections to the sufficiency of
said proceeding which are sought to be re-presented to
this court in the instant case. As the result of a very
thorough and exhaustive consideration of the merits of said
appeal and the issues presented thereon, the judgment
therein was affirmed. Not content to rest upon the affirm-
ance of said judgment, certain of the parties affected thereby
sought a writ of error to the supreme court of the United
States for the purpose of having reviewed therein the de-
cision of this court; but that supreme tribunal, on December
15, 1924, dismissed said writ of error and this gave finality
to the aforesaid decision of this court affirming said judg-
ment upon appeal. Thus, in our opinion, it has been finally
determined, first, that the assessment created by the suc-
cessive acts and orders of the reclamation board affecting
the lands, not only of the respondent Beckwith herein, but
of all other land owners within said drainage district covered
by said assessment and by the lien or liens imposed thereby

is, and that each and all of said liens are valid and subsisting liens upon said properties respectively; second, that the bonds provided to be voted for, issued, and sold under the terms and provisions of said Bonding Act and depending for their validity upon the validation of said assessment, are valid and subsisting bonds for the redemption of which all of the lands within said district which remain subject to the lien and payment of such assessment stand pledged are valid and enforceable bonds; third, that the proceeding instituted in the Superior Court in and for the County of Sutter and in which was rendered and entered the judgment which was affirmed by this court upon appeal, was essentially in the nature of an action to quiet title affecting each and all of the lands and land owners within said drainage district; that being such the procedure for obtaining jurisdiction over each and all of such land owners and their aforesaid properties and over all persons interested therein or claiming title thereto was sufficient to confer such jurisdiction upon said court so as to satisfy the constitutional requirement as to "due process of law."

As to the several objections which the respondents make to the sufficiency and validity of the proceeding in the Superior Court of the State of California which resulted in the judgment above referred to such as the objection that the judicial tribunal in which said proceeding was conducted was a special tribunal and was not the Superior Court; and also that the said tribunal, whether or not the Superior Court, had no jurisdiction over the lands of the respondent Beckwith, for the reason that no portion of said lands lie within the territorial limits of the county of Sutter, and also the several objections made to the validity of the reclamation board act and the various acts amendatory thereto based upon the sufficiency of the titles of said acts or the nature of said amendments, these questions have, we think, been concluded by the decisions of this court against the respondents' several contentions heretofore handed down, and to which reference has hereinbefore been made. [5] The judgment of the Superior Court of the State of California in and for the County of Sutter, which is in precise form attached to the petition herein as an exhibit and which in such form the respondents herein admit to have been given and made, appears on the face

thereof to be a valid judgment of said court. Being such, it cannot successfully be made the subject of collateral attack. (*Mulford* v. *Estudillo*, 23 Cal. 94; *Hill* v. *City Cab & T. Co.*, 79 Cal. 188 [21 Pac. 728]; *Dunn* v. *Dunn*, 114 Cal. 210 [46 Pac. 5]; *Crew* v. *Pratt*, 119 Cal. 139 [51 Pac. 38]; *Brush* v. *Smith*, 141 Cal. 466 [75 Pac. 55]; *Emery* v. *Kipp*, 154 Cal. 83 [129 Am. St. Rep. 141, 16 Ann. Cas. 792, 19 L. R. A. (N. S.) 983, 97 Pac. 17]; *Estate of McNeil*, 155 Cal. 333 [100 Pac. 1086]; *Williams* v. *Lane*, 158 Cal. 39 [109 Pac. 873]; *Crouch* v. *Miller & Co.*, 169 Cal. 341 [146 Pac. 880]; *Crouch* v. *Shafer*, 177 Cal. 154 [169 Pac. 1019]; *Seaboard Nat. Bank* v. *Ackerman*, 16 Cal. App. 55 [116 Pac. 91]; *Eccleston* v. *Roseburg*, 53 Cal. App. 14 [199 Pac. 859].) The several objections which the respondents have undertaken to set forth in their answers herein and which they urge upon the argument and in their briefs herein constitute a collateral attack upon said judgment which under the foregoing authorities they, or either or any of them, are not permitted to make herein.

[6] The foregoing conclusions as to the nature and finality of the judgment of the Superior Court in and for the County of Sutter with relation to the parties and the issues involved in that proceeding bring us to the final and only question involved in the instant proceeding, which is as to the effect of such determination upon the action now pending in the Superior Court in and for the County of Colusa, the past proceedings wherein we are asked to annul and the future proceedings wherein and the maintenance whereof we are asked to prohibit. This question involves a determination of the validity, effect, and application of the provisions of the "Bonding Act" relative to the institution and maintenance of actions involving the validity of said assessment or of such bonds. Section 4 of the Bonding Act, after providing for the institution by the reclamation board of an action for the validation of said assessment and of the issuance of such bonds within the period of ten days after the determination of such board to issue such bonds, proceeds to provide that, "During said period of ten days no action or proceeding shall in such case be commenced by any party other than said reclamation board to contest or in any manner question or interfere with the validity of said assessment, nor shall any action

be commenced to have the assessment upon any land modified or annulled, as provided in section thirteen of the said reclamation board act; nor shall any such action or proceeding of any kind be commenced by any party other than the reclamation board at any time thereafter; provided, the reclamation board shall, itself, within said period of ten days have commenced said judicial proceedings to validate said assessment as herein provided.'' Section 12 of the Bonding Act contains the provision that, ''excepting in the said judicial proceeding herein provided for, no action or defense shall ever be maintained attacking the said assessment in any respect,'' while section 32 of said Bonding Act provides, in part, that, ''Any action or proceeding commenced by any party other than the reclamation board to contest or in any manner interfere with the validity or disposition of said bonds must be tried in the county within which the largest acreage of land affected by said assessment or the issuance of said bonds is situated, and no such action or proceeding shall be commenced by any party other than the reclamation board until the expiration of ten days after such bonds have been so executed and delivered to the state treasurer, nor unless the action ·in this section provided for shall not have been commenced by the reclamation board within said period of ten days.'' It is the contention of the petitioner herein that the effect to be given by this court to the foregoing provisions of the ''Bonding Act'' is that it was the intent of the legislature to render the jurisdiction of the Superior Court in and for the county wherein the proceedings provided for in said ''Bonding Act'' for the validation of said assessment and of such bond issue were to be and were in fact instituted and determined, exclusive as to such determination, and to deprive the Superior Court of said or any other county within said drainage district or elsewhere of jurisdiction to thereafter entertain or determine any other action or proceeding involving the issue as to the validity of said assessment or of such bond issue. Such was doubtless the legislative intent, as evinced by the clear and unmistakable terms of the provisions of the ''Bonding Act,'' above quoted, and it remains for us to determine whether such legislative intent can be given effect through the issuance of the writ prayed for herein.

[7]   The superior courts of the state of California, while located and functioning in the several counties of the state, are not local or county courts, but constitute a system of state courts, being vested with and exercising the judicial power of the state under the express terms of section 1 of article VI of the state constitution. The jurisdiction of the system of state courts thus established is defined by section 5 of article VI of the constitution, and it is conceded by the petitioner herein that the constitutional jurisdiction and powers of the superior court as thus defined can in nowise be trenched upon, lessened or limited by the legislature. [8]   While this is undoubtedly true it does not follow that the legislative department of the state government possesses no regulative power with relation to the jurisdiction of the superior courts of the state or to the method and procedure in and means of which the constitutional powers of these courts are to be exercised. On the contrary, it has been decided by this court in a long and consistent line of cases that "the procedure by which the jurisdiction of said courts is to be exercised may be prescribed by the legislature, and that the statutory regulation thereof will be upheld unless such regulations should be found to substantially impair the constitutional powers of the courts or practically defeat their exercise." (*Ex parte Harker*, 49 Cal. 465.) The principle announced in the foregoing decision has been frequently approved and applied to cases involving the constitutional power of superior courts "in all cases in equity." In the case of *Glide* v. *Superior Court*, 147 Cal. 21 [81 Pac. 225], a writ of prohibition was issued by this court restraining the Superior Court of the County of Yolo from assuming jurisdiction to enjoin the board of supervisors of that county from proceeding to determine certain matters of fact relating to reclaimed lands within a reclamation district which had been confided by the legislature to the exclusive jurisdiction of said board. In the case of *United Railroads* v. *Superior Court*, 170 Cal. 755 [Ann. Cas. 1916E, 199, 151 Pac. 129], a writ of prohibition was issued by this court prohibiting the Superior Court of the City and County of San Francisco from proceeding in attempted violation of the provisions of sections 525 to 533, inclusive, of the Code of Civil Procedure, defining and limiting the powers

of superior courts in the matter of provisional remedies by way of injunction. In that case the objection to the issuance of the writ of prohibition was based upon the contention "that inasmuch as the state constitution of 1879 confers on the superior court original jurisdiction in all cases in equity; and that as, independent of statute, by virtue of such grant such court would have the power incident to the exercise of that jurisdiction to make such an order as that proposed, the legislature had no authority to thus limit the power of the superior court." In disposing of this contention this court said: "We are not strongly impressed by the argument made in support of this claim. We are aware of the fact that by our constitution very many limitations have been imposed upon the legislative department, but we are satisfied that there is nothing therein that expressly or impliedly prevents the legislature from enacting such regulations as to the exercise by the superior court of its original jurisdiction in all cases in equity as those pertinent to the matter before us"; and the court proceeded to show that from the earliest period in our state history similar regulations and limitations of the powers of courts in the exercise of their equity jurisdiction had been enacted and had been consistently upheld. *In the Matter of Reclamation District 1500* v. *Superior Court,* 171 Cal. 672 [154 Pac. 845], the question was brought more immediately home in its application to the situation presented in the instant proceeding. In that case this court issued a writ of prohibition preventing the Superior Court in and for the County of Sutter from entertaining an application for an injunction restraining said reclamation district from proceeding with the construction of certain levees in accordance with an act of 1913 (Stats. 1913, p. 130), the basis for the issuance of such prohibitory writ being the declared validity of section 3423 of the Civil Code denying to courts of equity the power to enjoin the execution of a public statute. It may be said incidentally at this point in the course of our decision that the petitioner herein urges that the foregoing case has direct application to the instant case for the reason that the pending action in the Superior Court of the County of Colusa is in effect one to impede and prevent the execution of the public statutes above referred to relating to the imposition and collection of the

assessment levied thereunder upon the lands within said drainage district. We do not, however, see fit to place our decision herein upon that ground. Before proceeding to a discussion of the immediate issue herein upon which our conclusion will be predicated, it will be instructive to refer to certain other classes of cases wherein writs of prohibition have issued preventing the further exercise of jurisdiction by superior courts over cases originally within their jurisdiction. In the case of *Modoc etc. Land Co.* v. *Superior Court,* 128 Cal. 255 [60 Pac. 848], it was held that a writ of prohibition should issue to prevent the superior court from further entertaining an action wherein the summons had not been issued within one year and served and returned within three years as required by section 581 (now 581a) of the Code of Civil Procedure, said section expressly providing that "the court is deprived of jurisdiction to take any other action than to dismiss the case." In the case of *Davis* v. *Superior Court,* 184 Cal. 691 [195 Pac. 390], a writ of prohibition was issued by this court preventing the Superior Court from further entertaining proceedings in an action wherein section 581b had not been complied with. In referring to said section of the code this court stated that its provisions were addressed not only to the parties but to the court; and this court proceeded to say (p. 696 [195 Pac. 393]): "In view of the fact that the Superior Court was then and ever since has been without power or jurisdiction to proceed further in the action, as we have shown, but nevertheless proposes so to do, and that further proceedings of any kind except to again dismiss the action would be void, we are disposed to grant the writ rather than put the parties to further vexation and useless expense by further attempts to prosecute it. The question is largely one of discretion and we deem it the better policy to terminate the proceedings forthwith."

The case of *Dungan* v. *Superior Court,* 149 Cal. 98 [117 Am. St. Rep. 49, 84 Pac. 767], presents a close analogy to the instant proceeding. The Superior Court is by the express terms of the constitution given jurisdiction "of all matters of probate." (Const., art. VI, sec. 5.) The Code of Civil Procedure, section 1294, subdivision 3, provides that when a decedent dies out of the state, not being a resident thereof, proceedings for the probate of his estate may

be had "in the county in which any part of the estate may be." Section 1295 of said code provides that where the estate of such decedent "is in more than one county . . . the superior court of that county in which application is first made for letters testamentary or of administration has exclusive jurisdiction of the settlement of the estate." In the above case proceedings had been commenced and were pending in the county of Tulare for the probate of the estate of such a decedent, leaving estate a portion of which was in Tulare County. Thereafter the public administrator of Fresno County commenced proceedings for the probate of said estate in that county, wherein also a portion of the decedent's estate was situated. Thereupon an application for a writ of prohibition was made to this court, in which it was sought to prohibit the Superior Court of Fresno County from taking or exercising jurisdiction over the said estate or the property thereof situate in Fresno County. The writ was granted in a decision by this court fully reviewing the authorities, holding that when jurisdiction has attached in the Superior Court of a particular county, and where the statute declares that such jurisdiction when so attached is exclusive, any other Superior Court attempting to take or exercise jurisdiction in the same matter is acting without and in excess of its power, citing *Estate of Damke,* 133 Cal. 430 [65 Pac. 889]; *Estate of Latour,* 140 Cal. 414 [73 Pac. 1070]; *Estate of Griffith,* 84 Cal. 107 [23 Pac. 528, 24 Pac. 381]; *Estate of Worthington,* 4 Ohio Dec. 381. The court further held that the writ should issue notwithstanding the fact that applicants might have a remedy by appeal. It may be proper at this point in the discussion to take note of the respondents' contention that under the express terms of section 5 of article VI of the constitution, "all actions for the recovery of the possession of, quieting the title to, or for the enforcement of liens upon real estate shall be commenced in the county in which the real estate or any part thereof affected by such action or actions is situated"; that since no part of the property of the respondent Beckwith, which is involved in the action which he has commenced in the county of Colusa, is situated in the county of Sutter, the Superior Court of the latter county could not be given by statute jurisdiction of such property without trenching upon the jurisdiction of the

Superior Court of the County of Colusa. That this is altogether too narrow an interpretation of the above-quoted constitutional provision was made plain by this court in its recent decision in *In re Sutter By-Pass Assessment No. 6, supra,* wherein (p. 670 [218 Pac. 35]) it was held that the foregoing provision of the constitution was susceptible of application to actions and proceedings of the nature of that involved in that case; and that a drainage district, even though the lands embraced therein consist of several and separate parcels of land which extend over and into two or more counties, is in its very nature a single entity and must be considered as a unit as to the lands embraced within the boundaries of such district, citing *State* v. *Elliott,* 32 Ind. App. 605 [70 N. E. 397]; *Denton* v. *Thompson,* 136 Ind. 446 [35 N. E. 264]; and that conceding that this is a suit in equity to quiet title to land situate in the several counties embraced within such district, jurisdiction is given by the constitution to the Superior Court in and for the County of Sutter, in which the greater part of the land affected is situated. It may be further instructive to take note of the fact that proceedings for the validation of assessments in irrigation, reclamation, drainage, and other districts of a like character have become increasingly common in acts of the legislature providing for the formation and functioning of such districts conducting operations which are intended to redound largely to the public welfare, and that such proceedings when fairly conducted, with adequate notice and opportunity for a hearing on the part of those persons whose properties are to be affected thereby, have been favored by the courts to the extent of upholding the declared legislative intent that such proceedings, when so conducted and determined, should be binding and conclusive upon those persons and properties over which jurisdiction to so conduct and so determine them had been acquired. Among the many cases so deciding the following may be cited: *Reclamation Dist. No. 551* v. *Runyan,* 117 Cal. 164 [49 Pac. 131]; *Reclamation Dist. No. 531* v. *McCullah,* 124 Cal. 175 [56 Pac. 887]; *Matter of Bonds of San Joaquin Irr. Dist.,* 161 Cal. 345 [119 Pac. 198]; *In re Sutter-Butte By-Pass Assessment No. 6 supra.*

[9] Bearing in mind the foregoing reasoning and conclusions of this court touching the subject of the power of

the legislature to regulate and control the procedure of su-·
perior courts in the course of the exercise of their con-
stitutional jurisdiction and of the extent to which such
power may be exercised, we approach the final question
in this case, which is as to whether the legislature by the
provisions of the act of 1919, commonly known as the
"Bonding Act," above quoted, and which purport to confine
the jurisdiction of the Superior Court to hear and determine
all questions touching the validity of the assessment upon
the lands lying within said drainage district to the pro-
ceeding to be instituted thereunder in the county within
which the largest area of such lands is located, and to de-
clare that such proceeding shall be exclusive and the deter-
mination therein final; and to forbid the institution of any
other action or proceeding in any of the other superior
courts of the state of California, is to be deemed to have
the effect of trenching upon or invading the constitutional
powers of such court in actions of the character of that
instituted by the respondent Beckwith in the Superior Court
of the County of Colusa. We are inclined to the opinion
that it does not. [10] The proceeding in the matter of
the validation of Sutter-Butte By-Pass Assessment No. 6,
commenced and prosecuted to a judgment in the county of
Sutter, which judgment has become final upon its affirmance
by this court, and doubly so by the dismissal of a writ of
error by the supreme court of the United States, was, as we
have seen, a proceeding in the nature of an action to quiet
title to all of the lands lying within the boundaries of
said drainage district and hence to the lands of the respond-
ent Beckwith herein lying in the county of Colusa. That
proceeding was a proceeding *in rem,* wherein the consti-
tutional requirement of "due process of law" was fully
satisfied by the giving of notice in the form and to the
extent required by the statute authorizing such proceeding.
The respondent Beckwith was a party to that proceeding
and full jurisdiction was acquired by said court over him
and over his said property by virtue of such notice. He
has had, therefore, his day in court and has been accorded
the equal protection of the laws. The Superior Court which
has thus gained jurisdiction over him and his said property
has also been accorded and has proceeded to exercise all
of the jurisdiction which has been given to it by the pro-

·visions of the state constitution above referred to; and it has exhausted such jurisdiction in so far as the said respondent Beckwith and his said property are concerned by its full hearing and final determination of said proceeding and of the issues litigated or litigable therein. Any further attempt on the part of said Superior Court in whatever county within said drainage district situated could only amount to a resumption of jurisdiction over the same parties, the same properties and the same issues as to which its jurisdiction thus conferred has already been fully exercised. For the legislature, therefore, to say that the Superior Court of the State of California functioning within one county which is embraced within the exterior boundaries of said drainage district shall not have power and jurisdiction over actions or proceedings involving the same persons, properties, and issues as those over which the said Superior Court, functioning in another of the counties embraced within said drainage district, has been given and exercised full and final jurisdiction, does not in any manner or to any degree trench upon, invade, or limit the constitutional grant of power to such Superior Court which has already been fully assumed and exercised by it. It may be said in conclusion that the respondents herein, other than said respondent Beckwith, stand in no better position to urge the objections to the issuance of this writ than does said Beckwith, since he is the only party in interest in the action pending in the Superior Court of the County of Colusa, the further maintenance of which this writ is sought to prohibit. Whatever other questions are presented or discussed by respective counsel herein are either fully covered by our previous decisions affecting the various phases of this same matter already considered by this court, or are deemed sufficiently covered by our foregoing reasoning and conclusion as not to require further consideration.

Let the writ issue as prayed for.

Lennon, J., Lawlor, J., Seawell, J., Shenk, J., Myers, C. J., and Waste, J., concurred.

Rehearing denied.

All the Justices present concurred.